BERNARDO SAMPEYREAC AND JOSEPH STEWART, APPELLANTS
v. THE UNITED STATES, APPELLEES.

Construction of the act of congress passed the 5th of May 1830, entitled "an act for the further extending the powers of the judges of the superior court of the territory of Arkansas, under the act of the 26th May 1824, and for other purposes."

Under the provisions of an act of congress passed on the 26th May 1824, proceedings were instituted in the superior court of the territory of Arkansas, by which a confirmation was claimed of a grant of land alleged to have been made to the petitioner, Sampeyreac, by the Spanish government, prior to the cession of Louisiana to the United States by the treaty of April 3d, 1803. This claim was opposed by the district attorney of the United States; and the court, after hearing evidence, decreed that the petitioner recover the land from the United States. Afterwards, the district attorney of the United States, proceeding on the authority of the act of 8th May 1830, filed a bill of review, founded on the allegation that the original decree was obtained by fraud and surprise, that the documents produced in support of the claim of Sampeyreac were forged, and that the witnesses who had been examined to sustain the same were perjured. At a subsequent term Stewart was allowed to become a defendant to the bill of review, and filed an answer, in which the fraud and forgery are denied, and in which he asserts that if the same were committed, he is ignorant thereof, and asserts that he is a bona fide purchaser of the land for a valuable consideration, from one John J. Bowie, who conveyed to him the claim of Sampeyreac by deed, dated about the 22d October 1828. On a final hearing, the court being satisfied of the forgery, perjury and fraud, reversed the original decree. Held, that these proceedings were legal, and were authorized by the act of the 5th of May 1830.

Almost every law providing a new remedy, affects and operates upon causes of action existing at the time the law is passed. The law of 1830 is in no respect the exercise of judicial powers; it only organizes a tribunal with the powers to entertain judicial proceedings. The act, in terms, applies to bills filed, or to be filed. Such retrospective effect is no unusual course in laws providing new remedies.

The act of 1830 does not require that all the technical rules in the ordinary course of chancery proceedings on a bill of review shall be pursued in proceedings instituted under the law.

In the case of Polk's Lessee v. Wendell, 5 Wheat. 308, it is said by this court, that, on general principles, it is incontestable that a grantee can convey no more than he possesses. Hence, those who come in under a void grant, can acquire nothing.

[Sampeyreac and Stewart v. The United States.]

APPEAL from the supreme court of Arkansas.

The appellant, Sampeyreac, under the act of congress of the 26th of May 1824, entitled "an act enabling the claimants to lands within the limits of the state of Missouri, and territory of Arkansas, to institute proceedings to try the validity of their claims," exhibited the bill against the United States, which was filed in the clerk's office of the superior court, in the territory of Arkansas, in chancery sitting, on the 21st day of November 1827, stating that, being an inhabitant of Louisiana, he did, on the 6th day of October 1789, address a letter to the governor of the then Spanish province of Louisiana, asking for ten arpens of land in front, with the usual depth, on Strawberry river, within the district of Arkansas, to be granted to him in full property; and that the said governor did, on the 11th day of October 1789, make an order of survey upon said petition, which the appellant alleges is such a claim as might have been perfected into a complete title, under and in conformity to the laws, usages and customs of the government of Spain, under which the same originated, had not the sovereignty of the country been transferred to the United States; and is therefore provided for by the treaty between the United States and the French republic, made the 30th April 1803. The bill prays that this claim may be confirmed, according to the provisions of the act of congress before mentioned. Upon this petition the clerk of the court issued a subpoena against the district attorney of the United States, which was executed on the 24th of November 1827. To this bill the district attorney of the United States filed an answer at the December term of said court 1827, denying, generally, the facts and allegations in said bill, and alleging that Sampeyreac was a fictitious person, or was a foreigner, and then dead. On the 19th day of December 1827, the district attorney of the United States moved to postpone the final adjudication of the case until the following term, for the following reasons.

1. The petition and subpoena in this case were served on the United States within one month of the present term of this court, but more than fifteen days allowed by law; and in consequence of this short notice, the United States attorney has not answered this bill until the present term.

2. Has not had a sufficient length of time to take counter depositions, if counter evidence does exist.

3. There are many more cases pending in this court on the same principles, and similarly situated in all respects; and the attorney for the United States asks this continuance for the purpose of procuring such evidence as may exist on the part of the government.

The court proceeded to hear the cause ; and, upon the deposition of one John Heberard, entered on that day a decree against the United States, in favour of said Sampeyreac, for four hundred arpens of land.

On the 14th day of February 1828, a deed purporting to be a decree executed by Sampeyreac, transferring his claim to the clerk's certificate of the existence of this decree, and of all his right, title and interest in said decree, to John J. Bowie, was proved and admitted to record on the 22d day of October 1828, in the office of the circuit court of Hempstead county, in the territory of Arkansas, and which title was transferred by Bowie to Joseph Stewart in December 1828 ; by virtue of which transfer the said Stewart filed with the register of the land office at Little Rock, an application for the N. E. 17, 11 S. 26 W. and E. ½ S. E. 17, 11 S. 26 W. and W. ½ N. E. 13, 11 S. 27 W. and which application was admitted by the register on the 13th of December 1828.

At the April term 1830 of the court, the United States attorney, upon leave granted, filed a bill charging that the decree entered by the court at the December term 1827, in the case of Sampeyreac, was obtained by fraud and surprise, and alleging that the court erred in proceeding to the trial of said cause, at the said December term, without having set said cause for hearing, and without affording the United States time to prove the injustice of the claim. The bill charges that the original petition to governor Mero, and the order of survey are forgeries; which fact has come to the knowledge of the attorney since the decree was made; that Sampeyreac is a fictitious person ; or, if he ever did exist, is dead; that Heberard and the other witnesses committed perjury in this case ; and that the petition and order of survey were made since 1789 ; and that record evidence has been discovered since the

decree, which will be produced upon the hearing to prove the forgery.

Sampeyreac was proceeded against as an absent defendant, after the return of the subpœna, that "he was not to be found in the territory of Arkansas;" and a decree pro confesso was entered, as to him, on the 28th day of October 1830. Before this decree was entered, Joseph Stewart was permitted to file his answer and was made a defendant in this case, which was excepted to on the part of the United States, and a bill of exceptions was signed by the court on the 28th October 1830.

It was not charged or contended that Stewart purchased with a knowledge of the forgery, either of the original grant, or of the transfer from Sampeyreac to Bowie.

The final decree, reversing and annulling the decree entered in favour of Sampeyreac at December term 1827, was delivered by the court February 7th, 1831.

From this decree this appeal was taken by Joseph Stewart, for himself and Sampeyreac.

The case was argued by Mr Prentiss and Mr White, for the appellants; and by Mr Fulton and Mr Taney, the attorney-general, for the United States.

For the appellants, the following points were stated for the consideration of the court.

1. That, by the provisions of the act of 1824, and of the act continuing it, the decree of confirmation, rendered in December term 1827, became final after the lapse of one whole year from its date, without an appeal being taken therefrom.

2. That a bill of review cannot be prosecuted after the time for allowing an appeal has expired.

3. That, if the foregoing proposition is not universally true, it so is to a bill of review for errors apparent, and as to which the party could have availed himself by an appeal.

4. If a bill of review can be prosecuted for any cause, after the time for an appeal has expired, it cannot be for causes known to the party at the time of rendering the decree complained of.

5. The refusal of the court to continue the cause at Decem-

ber term 1827, was not an error re-examinable on appeal; or, if so, was an error apparent, which could have been corrected on an appeal, if taken within the year allowed for an appeal; and, therefore, not by a bill of review, after the expiration of the time allowed for an appeal.

6. The substantial ground in difference between the United States and Sampeyreac, supposing there was such a person in being, was, that the order of survey was or was not a genuine one—was or was not a forgery. This was the whole ground of difference; and both this fact and the question whether Sampeyreac was a real inhabitant of Louisiana, capable of taking or had assigned his claim, were all put directly in issue on the original trial.

7. After the decree rendered in the first case, a bill of review cannot be maintained, on after discovered testimony which could have been used under the issue joined, unless such after discovered evidence be evidence of record.

8. Although the bill of review suggests the discovery of such record evidence, none such is produced on the bill of review; the only evidence being that of witnesses and the title papers in the other cases then depending, all of which were known, and, if proper evidence, could have been used on the first trial.

9. All that is alleged in the bill of review, concerning the appearance of the papers themselves, and other facts to show they were post dated, appeared on the first trial.

10. The time of discovery of the new evidence is not stated, nor does it appear; and it is contended that, if such be evidence, discovered after trial, as will sustain a bill of review, the bill must, at least, appear to have been filed within one year from the time of such discovery.

11. If the refusal to continue the cause at December term, was a matter which could be alleged on a bill of review, or considered on an appeal, there was no error in that refusal, as the law only required fifteen days between the service and return of the subpœna, whereas twenty-eight days intervened, and required a trial to be had at the first term, unless good cause should be shown for a continuance; and it is contended that, as the cases were all treated as similar, and it was not alleged that there had not been time to file answers; and as

[Sampeyreac and Stewart v. The United States.]

the United States attorney admitted the credibility of the claimant's witness, and stated that he knew of no testimony which could impeach the genuineness of the claim, he showed no cause of continuance, unless he could show it in the improvident provisions of the act of congress under which he was acting.

12. The defendant Stewart is an innocent purchaser, and is entitled to protection, whether the original claim was a forged one or not. That Sampeyreac, after the decree confirming his claim, conveyed his right to Bowie, appears from his recorded deed read in evidence by consent; and, although they insisted that that deed was a forgery, no evidence of any kind was taken to support that objection. That Stewart was an innocent purchaser, in November or December 1828, is admitted in the fullest terms. "*A purchaser by deed, and in good faith.*"

13. It appears that, being such purchaser in good faith, Stewart made entry of the claim on the 13th December 1828, according to the provisions of the act of 1824. The time for taking an appeal, or for prosecuting a bill of review for errors apparent, expired the 19th December 1828, one year after the decree : and it will be insisted that Stewart had, under his entry, and the operation of the act of 1824, an inchoate legal title ; nay, more, a legal title in fact, of which an after acquired patent would only operate as the evidence.

14. It was further contended, that, when Stewart made his entry, he had done all that he could, or was bound to do. It was the duty of the ministerial officers of government to make out his grant.

Before the counsel for the appellants proceeded to argue the case, they admitted that the grant under which Sampeyreac claimed the land was a forgery; that the deed from him to Bowie was a forgery; and that the witnesses who were examined to support the grant had sworn falsely.

Mr Prentiss, for the appellants, contended, that the act of 1824 did not give the superior court of Arkansas any jurisdiction or authority to entertain a bill of review. This is a conclusion warranted by the object of the law, and a fair construction of its terms.

The object of that law was to furnish the means of a speedy and final adjudication upon the Spanish and French land claims in Arkansas and Missouri. To accomplish this, a special jurisdiction was given to the superior court, limited to the particular cases which were to be adjudicated by it; and limited as to the time in which it was to act upon them. The court, having been created by the act, had no other powers than those it derived from its provisions. 6 Peters, 487. Its special jurisdiction does not mingle with, nor was it in any manner increased by the general chancery jurisdiction which it possesses.

The power therefore to entertain a bill of review in the case before the court, cannot be deduced from the general powers of the court, as a court of chancery; but if it exists at all, it is to be sought for only in the act, and the act no where expressly gives it. The court had authority to try titles simply; to direct issues of fact; all of which were useless if it had general chancery jurisdiction. It was, by the fifth section, to decide on claims exhibited within two years; and its decision was to be given in three years. The allowance of an appeal was intended as a substitute for a bill of review; and an appeal is the only mode by which the sentences of the court could be re-examined,

Another argument against the power of the court to entertain a bill of review, may be drawn from the provision which exempts the district attorney from the obligation to make oath to the answer he may file to the petition of a land claimant. If a bill of review was intended to be allowed, would not a similar provision have been made in reference to it? A bill of review, according to chancery rules, must be sworn to.

The proceeding in this case was not under the act of 1830. The bill was filed in April 1830, and the act did not pass until the 10th of May following.

But the act could not operate retrospectively, as it would be unconstitutional. Could it so operate, it would divest private rights acquired in good faith, and under the sanction of a solemn and final decree of the superior court of Arkansas, in a matter fully within its cognizance. By such an operation the law was not remedial, but was an extinguishment of a right. This is contrary to the fifth amendment of the constitution, by which

private property is protected.    The private property of Stewart was, by this act, taken away and given to the United States.

The act of May 1830, was the exercise of a judicial power, and it is no answer to this objection, that the execution of its provisions is given to a court.    The legislature of the union cannot use such a power.    The law violated the contract between the United States and the claimant ; a contract entered into under the prior law, and consummated by the decision of the court : and it was equally in opposition to the principles of natural justice as it is to the constitutional declaration.    Cited, 1 Aiken, 315; 2 Aiken, 284; 3 Greenleaf, 326; 2 Greenleaf, 287; 11 Mass. 386, 394, 399; 2 Peters, 657; 6 Cranch, 87, 2 Cond. Rep. 308; 7 John. 477.

The proceedings on the part of the United States are not correct, according to the chancery practice, if the court had the power to entertain them.

A bill of review can be maintained in only two cases.    1. Where error is apparent on the record.    2. Where there is some new matter, which has become known subsequent to the decree, which is to be brought into re-examination.

The only error, if any, in the record, was refusing a continuance.    This is not the subject of revision.    The limitation of a bill of review is the same as a limitation of an appeal ; which in this case, under the law of 1824, was one year.

There was no new matter to authorize the bill of review. The rule is, that the new matter must be unknown; and could not, with ordinary diligence, have been known : and the same must be set out in the bill.    Hind's Pract. 56, 57, 60 ; Freeman's Ch. Rep. 30, 177; 16 Vesey, 350; 2 John. Chan. 488 ; 3 John. Chan. 124; Hardin's Reports, 342; 1 Hopk. Ch. Rep. 102.

The only new matter coming at all within the rule was the forgery of the grant and order of survey ; but the bill of review alleges that all these facts appear in the original bill, and so of course were not new.    The general allegation that there is new evidence, is not sufficient : the evidence should have been stated.    The forgery of these papers was put in issue in the original bill and answer ; and the question upon them was judicially closed by the original decree.

Joseph Stewart is an innocent purchaser. He holds the land under the decree of confirmation, and not under a patent. His purchase was made in good faith, and he should not be disturbed; however fraudulent the acts of those who presented the claim for confirmation. He could know nothing but the recorded acts of the court of Arkansas, proceeding under and according to the provisions of the laws of congress in a matter specially entrusted to that court. As the United States ought not to seek from him the restoration of the property taken from them by the frauds of those to whom he as well as the government was a stranger; so this court should not sanction such a claim.

Mr Fulton, for the United States.

The superior court of Arkansas had jurisdiction of the case under the act of 1824, that act having given to the court chancery as well as common law powers. It proceeded in this case according to the rules of a court of chancery.

By the treaty with France of 1803, the United States were bound to protect and confirm private land claims; and for this purpose full powers were given to the court in Arkansas. The titles of the claimants were in a language foreign to the judges of the court: the witnesses to sustain them were unknown to the tribunal, and the whole effort of able counsel was given to establish them. If, in such cases, the courts and the land officers of the government were imposed upon, it was not extraordinary.

An examination of the law of 1828, with reference to the act of 1824, will result in the conviction, that no limitation upon the powers of the court was intended, other than as to the time of filing new claims and petitions. Having general chancery powers in all the cases which came before the court, it could proceed at any time in those cases, according to the principles and practice of courts of chancery.

But if any doubt can be raised upon the act of 1828, the provisions of the act of 1830 relieve the case from every embarrassment. By that act full powers are expressly given to proceed, as was done in the case before the court; and the only question to be decided, in order to maintain the decree of the

court below is, whether the act was constitutional. To show the constitutionality of the law, Calder v. Bull, 3 Dall. 386, was cited; and upon the powers of congress over the territories of the United States, 1 Kent's Com. 360, was referred to.

There are errors on the face of the decree in the original proceedings.

The decree was entered only twenty-five days after the bill was filed, and against the strong resistance of the district attorney; who asked for time to obtain testimony by which the alleged frauds and forgeries might have been discovered. This furnished a sufficient ground for a continuance; and its refusal violated the rules of proceeding established by the court.

There were one hundred and thirty cases of the same description, and which were adjudged at the same time; and in none of them are the laws or ordinances of Spain, upon which the titles rested, set out in the decree of the court.

Fraud is laid as the ground of the bill of review, and this is a sufficient ground for the proceeding. When the court has been grossly and evidently imposed upon, it must necessarily have a power to revise its decree, and correct the errors into which it has been drawn by the deceit and falsehood of a party who has abused its powers to obtain the benefit of his artifices and forgeries.

Nor can the appellant, Stewart, claim any thing under the decree in the original proceeding as an innocent purchaser. The act of congress did not authorize the transfer of any right acquired under the decree. He appears claiming only an equitable title, as he can have no legal title.

Those who claim under a void grant, can acquire no right. Stewart having been altogether unconnected with the decree, can claim under it no more than Sampeyreac, and Sampeyreac could not get a patent for the land. Cited, 1 Harrison's Chan. 452, 140, 146; 3 Wilson, 111; 2 Mad. Chan. 409; 1 Mad. Chan. 237; 1 Johns. Chan. 482; 1 Peters, 517, 542.

The attorney-general contended, that the case was not within the treaty with France, and was not within the cognizance of the court of Arkansas. There was no claim exist-

ing under a grant, no title whatever was in the possession of the party to the proceeding; all the papers were forged, and all the witnesses who swore to the verity of the papers were perjured. These facts are admitted.

Thus the act of congress, having given to the court authority to confirm grants which had issued, and to proceed in the investigation of titles set up under such grants, whatever may have been done by the court under mistake, or from the frauds of those for whom the law was not made; could give no title to any land against the right of the United States. The court had no jurisdiction in such a case. Stewart claimed under Bowie, and it is admited that Bowie's title was a forgery. If Sampeyreac was a real person, the title is yet in him.

It is said the first decree is final and conclusive; that the powers of the court of Arkansas had expired, and no bill of review would lie there; and that congress could not pass a law authorizing a bill of review.

The act of 1828 continues the court as it was before, and also enlarges the time for filing claims. This act could not be considered as creating a new special jurisdiction. It was intended to continue the court with all its powers; and it could of course entertain a bill of review, under the general powers of a court of chancery.

But if the court, under the act of 1824, had no such power, yet, as the United States had a right to the land, which could not be taken away by admitted forgeries, and congress could give a remedy for the injury sustained for such frauds ; the act of 1830 is without objection. That a government has such powers, has been decided at this term in the case of Livingston's Lessee v. Moore et al. The case before the court, in this view of it, is, that there was an admitted forgery, and the act of 1830 established a court for the trial of that question.

The next inquiry is, whether the court pursued the remedy the law authorized.

The act of 1830 gives the review generally, and without restricting it to the technical rules of a bill of review in chancery. Congress might prescribe any form of remedy. The review is given on the suggestion of forgery. The review is

given, not technically, but as a rehearing or revision by a proceeding in the nature of a bill of review. The act declares it to be for *revising* the former decrees of the court.

A bill of review may be filed without leave of the court, and without an affidavit. 2 Atk. 532. The want of an affidavit, and the fact that the bill was filed without the previous consent of the court, cannot be taken advantage of on appeal. If the party appears and answers, it is a waiver of the affidavit.

But in point of fact, the bill was filed with the leave of the court. The decree being taken *pro confesso* against Sampeyreac, he admits the allegations in the bill, and of course whatever the affidavit could state. But if Sampeyreac could set up and avail himself of these objections, Stewart cannot do so. Stewart, who brings the case here, has no interest in the lands. He cannot have such an interest through a forgery. The whole proceeding in the name of Sampeyreac was null and void, and could establish no right to be held or enjoyed by any one under the same.

Mr White, for the appellants, in reply.

The questions in this case are, whether the fraud, which is admitted, can be reached by this court; and whether all remedy is not lost to the United States by the lapse of time. There is a difference between the treaty with France of 1803, and that with Spain of 1819. The former does not confirm the grants of land within the ceded territory, the latter confirms them proprio vigore. An examination of the act of 1824 will fully satisfy the court, that unless an appeal has been taken from the decree of a court acting under that law, within one year, the title which has been confirmed by the decree of the court, becomes fixed and completed.

It is denied that the refusal of the court to grant a continuance, as required by the district attorney of the United States, was error. There was no cause shown for the continuance; no direct allegation that evidence could be obtained; and the court were bound by the act of congress to proceed promptly. But the refusal of an inferior court to grant a continuance, is not to be assigned as error in a court of appeals. This is the

[Sampeyreac and Stewart v. The United States.]

exercise of a discretion which cannot afterwards be inquired into.

The certificate given by the court in favour of the party whose title has been confirmed by the court is assignable; and the purchaser may take a patent for the land in his own name. An innocent purchaser has only to look at the decree of confirmation. The steps to procure that, however false or fraudulent, cannot affect him. The universal practice of the government has been to give the patent to the assignee of the certificate.

The bill of review in this case was filed before the act of 1830 passed, and can only be sustained on the law of 1824; and this could not be:

1. Because it was not sworn to. The only privilege given to the United States is, that the answer need not be sworn to.

2. Because it was filed by leave of the court. The original decree must be executed before a bill of review will be allowed, and there must be new matter, not in issue in the original case, for the foundation of such a bill. Here there was none, as the question of forged titles was in issue in the original case.

A bill of review is the exercise of judicial power; and no power exists in congress to give a bill of review to divest a right vested before the enactment of the law. 1 Cond. Rep. 179; Fletcher v. Peck, 6 Cranch.

As to purchasers without notice, cited, 1 Johns. Ch. Cases, 219. As to forged warrants, cited, 5 Wheat. 309.

That Stewart was a necessary party in the case, cited, 10 Wheat. 181; 8 Wheat. 451; 7 Wheat. 522.

Mr Justice Thompson delivered the opinion of the Court.

This case comes up on appeal from the superior court in the territory of Arkansas.

The decree of the court was founded upon proceedings instituted under an act of congress, entitled "an act for further extending the powers of the judges of the superior court of the territory of Arkansas, under the act of the 26th May 1824, and for other purposes," passed the 8th of May 1830. Pamph. Laws, ch. 90.

This act declares that the act of 1824 (7 Laws U. S. 300)

shall be continued in force, so far as the said act relates to the claims within the territory of Arkansas, until the 1st day of July 1831, for the purpose of enabling the court in Arkansas, having cognizance of claims under the said act, to proceed by bills of review, filed, or to be filed, in the said court on the part of the United States, for the purpose of revising all or any of the decrees of the said court, in cases wherein it shall appear to the said court, or be alleged in such bills of review, that the jurisdiction of the same was assumed in any case on any forged warrant, concession, grar , order of survey, or other evidence of title.    And in every case wherein it shall appear to the said court, on the prosecution of any such bill of review, that such warrant, concession, grant, order of survey, or other evidence of title is a forgery, it shall be lawful, and the said court is hereby authorized to proceed, by further order and decree, to reverse and annul any prior decree or adjudication upon such claim ; and, thereupon, such prior decree or adjudication shall be deemed and held in all places whatever, to be null and void to all intents and purposes.

Upon the proceedings on the bill of review instituted under this act, the court pronounced the following decree : "it is therefore adjudged, ordered and decreed that the former decree of this court, in favour of the defendant Bernardo Sampeyreac against the United States, for four hundred acres of land, pronounced and recorded at the December term of this court in the year 1827, be, and the same is hereby reversed, annulled and held for naught." From this decree the present appeal was taken.

To a right understanding of the questions which have been made at the bar, it will be necessary briefly to state the proceedings which took place under the original bill.

That bill or petition was filed on the 21st of November 1827, under the provisions of the act of the 26th of May 1824 (7 Laws U. S. 300), setting forth that the complainant Bernardo Sampeyreac, on the 6th of October 1789, he then being an inhabitant of Louisiana, presented a petition to the then governor of the province, asking a grant for a tract of land in full property, containing ten arpens in front, by the usual depth, on

Strawberry river, &c.    That afterwards, on the 11th of October 1789, the governor granted the petition.    That at the time the grant was so made, an order of survey was issued to the surveyor general of the province.    That by virtue of such grant and order of survey, the petitioner acquired a claim to the land; which claim is secured to him by the treaty between the United States and the French republic, of the 30th of April 1803.

The district attorney put in an answer, denying the several facts and allegations in the bill; and alleging that grants could only be made, legally, to persons in existence and actually residing in Louisiana.    That Sampeyreac, in whose name the bill is filed, is a fictitious person, never having had any actual existence; or if such person ever had any existence he was a foreigner; or is now dead, and made no transfer or assignment of the claim in his lifetime.    That he has no legal representative in existence; nor is there any one now living who is authorized to file this bill, or prosecute this suit: and prayed that the bill might be dismissed.

A witness by the name of John Heberard was examined, and sworn to all the material facts necessary to establish the claim; and the court, thereupon, ordered, adjudged and decreed that the said Bernardo Sampeyreac, recover of the United States the said four hundred arpens of land.

The bill of review is founded upon the allegation that the original decree was obtained by fraud and surprise.    That the original petition and order of survey, exhibited in the case, are forged.    That Heberard and the other witnesses in the cause, committed the crime of perjury.    That the order of survey was never signed by Mero, governor of Louisiana, as the same purports to have been; and that this fact has come to the knowledge of the district attorney since the decree was entered. And the bill further charges that the said Sampeyreac is a fictitious person.

At the October term 1830, this bill was taken, pro confesso, against Sampeyreac: at which term the appellant, Joseph Stewart, appeared in court, and prayed to be made a defendant, and have leave to file an answer to the bill.    This was resisted

by the district attorney ; but an order was made by the court permitting Stewart to be made a defendant, 'with leave to file an answer. To which the district attorney excepted.

The answer of Stewart denies the frauds and forgeries alleged in the bill, but avers that if there was any fraud, corruption or forgery, he is ignorant of it ; and that he was a bona fide purchaser of the claim for a valuable consideration from one John J. Bowie, who conveyed to him the claim of the said Bernardo Sampeyreac, by deed bearing date about the 22d of October 1828. Upon the final hearing the court reversed the original decree, as has been already stated.

The objections which have been taken at the bar to this decree, may be considered under the following points :

1. Whether, under the act of 1824, the court had authority to entertain the bill of review; and, if not, then,

2. Whether the act of 1830 is a constitutional law, and confers such authority.

3. Whether the proceedings on this bill of review can be sustained under the act of 1830.

4. Whether, admitting Stewart to be a bona fide purchaser of the claim of Sampeyreac, he is protected against the title set up by the United States.

1. We think it unnecessary to go into an examination of the questions which have been made under the first point. Although the act of 1824 directs that every petition which shall be presented under its provisions, shall be conducted according to the rules of a court of equity, it may admit of doubt whether all the powers of a court of chancery in relation to bills of review, are vested in that court. And as the view taken by this court upon the other points renders a decision upon this unnecessary, we pass it over without expressing any opinion upon it.

2. The ground upon which it has been argued that the act of 1830 is unconstitutional, is, that a right had become vested in Stewart before the act was passed ; and that the effect and operation of the law is to deprive him of a vested right. To determine the force and application of this objection, it becomes necessary to look at the claim, as it now appears, before the court. It is found by the decree of the court below, and is

admitted at the bar, that Sampeyreac is a fictitious person. That the petition purporting to have been presented by him to Mero, governor of the province of Louisiana, and the order of survey alleged to have been made thereupon, are forgeries. These are the only evidence of title upon which the original claim rests.   And it is proved and admitted that the deed purporting to have been given by Sampeyreac to Bowie, under whom Stewart claims, is also a forgery.   The bill or petition filed in the original cause, alleges that the claim is secured by the treaty between the United States and the French republic, of the 30th of April 1803.   This, however, has not been insisted upon on the argument here; and there is certainly no colour for pretending that a claim founded in fraud and forgery is sanctioned by the treaty.   The title to the land in question passed by the treaty, and became vested in the United States ; and there has been no act, on the part of the United States, by which they have parted with the title.   It is contended, however, that this right or title has been taken away by the original decree in this case, under the act of 1824.   By the fourteenth section of that act, all its provisions are extended to the territory of Arkansas ; and it is declared that the superior court of that territory shall have, hold, and exercise jurisdiction in all cases, in the same manner, and under the same restrictions and regulations in all respects, as is given by the said act to the district court of the state of Missouri.   And by the second section of the act, it is declared that in all cases the party, against whom the judgment or decree of the court may be finally given, shall be entitled to appeal within one year from its rendition to the supreme court of the United States, the decision of which court shall be final and conclusive *between the parties;* and should no appeal be taken, the judgment or decree of the district court shall in like manner be final and conclusive.   No appeal was taken within the year; and the question is, whether the United States, by neglecting to appeal, have lost their right; and if not, whether the remedy provided by the act of 1830, to assert that right, is in violation of the constitution.   If Sampeyreac was a real person, and appeared here setting up this objection, it might present a different question; although it is not admitted, even in that case,

that the United States would be concluded as to the right. But the original decree in this case was a mere nullity; it gave no right to any one. The title still remained in the United States; and the most that can be said is, that by omitting to appeal within the time limited by the act, the remedy thereby provided was gone, and the decree became final and conclusive with respect to such remedy. But the act of 1830 provides a new remedy; and it may be added that the act of 1804 declares the decree to be final and conclusive *between the parties*. And as Sampeyreac was a fictitious person, he was no party to the decree, and the act in strictness does not apply to the case. But, considering the act of 1830 as providing a remedy only, it is entirely unexceptionable. It has been repeatedly decided in this court, that the retrospective operation of such a law forms no objection to it. Almost every law, providing a new remedy, affects and operates upon causes of action existing at the time the law is passed. The law of 1830 is in no respect the exercise of judicial powers. It only organizes a tribunal with powers to entertain judicial proceedings. When the original decree was entered, there was no person in existence whose claim could be ripened into a right against the United States by omitting to appeal. Stewart was not only no party to the decree; but his purchase from Bowie was nearly a year after the decree was entered.

Had Sampeyreac been a real person, having a decree in his favour, and Stewart had afterwards purchased of Bowie the right which that decree established, it might have given him some equitable claim; but it would have been subject to all prior equitable, as well as legal rights. Nor would it be available in any respect in the present case, for Stewart in no manner whatever connects himself with Sampeyreac. As it is admitted that the deed purporting to have been given by Sampeyreac to Bowie is a forgery, Stewart is therefore a mere stranger to this decree, and can derive no benefit from it.

It is said, that if this bill of review was filed under the act of 1830, the court had no jurisdiction; the bill having been filed in April, and the law not passed until the May following. But the act in terms applies to bills filed or to be filed, and of course

cures his defect, if any existed.    Such retrospective effect is no unusual course, in laws providing new remedies.

The act of 1803, amending the judicial system of the United States, 3 Laws U. S. 560, declares, that from all final judgments or decrees, rendered or to be rendered, in any circuit court, &c., an appeal shall be allowed to the supreme court, &c.

It therefore forms no objection to the law, that the cause of action existed antecedent to its passage; so far as it applies to the remedy, and does not affect the right.

3. But it is objected, in the next place, that this bill of review cannot be sustained under the act of 1830.    That it was not filed and prosecuted under the limitations and restrictions, and according to the course and practice of a court of chancery in such a proceeding.  We think it unnecessary to examine whether all the technical rules required in the ordinary course of chancery proceedings, on a bill of review, have been pursued in the present case.    The act clearly does not require it.    It authorizes bills of review to be filed on the part of the United States, for the purpose of revising all or any of the decrees of the said court, in cases wherein it shall appear to the said court, or be alleged in such bills of review, that the jurisdiction of the same was assumed, in any case, on any forged warrant, concession, grant, order of survey, or other evidence of title.    If congress had a right to provide a tribunal in which the remedy might be prosecuted, they clearly had a right to prescribe the manner in which it should be pursued.    The great and leading object was to provide for revising the original decree, or granting a new trial.    The material allegation required is, that the original decree was founded upon some forged evidence of title; and this is very fully set out in the bill.    That it was not the intention of the law, that the court should be confined to the technical rules of a court of chancery on bills of review, is evident from the provision in the last clause of the first section of the act, which directs the court to proceed on such bills of review, by such rules of practice and regulations as they may adopt for the execution of the powers vested or confirmed in them by the act.

4. The next inquiry is, whether the appellant, Stewart, has

acquired a right to the land, by reason of his standing in the character of a bona fide purchaser. The record contains an admission on the part of the United States, that he purchased the claims of John J. Bowie, by deed, for a valuable consideration, in good faith, some time in November or December 1828. But this gave him no right to be let in as a party in the bill of review; he was not a party to the original bill, nor could he connect himself with Sampeyreac, the only party to the bill, he being a fictitious person; and the interest of Stewart, whatever it might be, was acquired long after the original decree was entered. He was, therefore, a perfect stranger to that decree. The deed purporting to have been given by Sampeyreac to Bowie, is admitted to be a forgery. Bowie, of course, had no interest, legal or equitable, which he would convey to Stewart. But admitting Stewart to have been properly let in as a party in the bill of review, the only colourable equity which he showed, was the certificate of entry given by the register of the land office, December 13th, 1828: and this certificate, founded on a decree in favour of Sampeyreac, a fictitious person, obtained by fraud, and upon forged evidence of title. This certificate is entirely unavailable to Stewart. He can obtain no patent under it if the original decree should remain unreversed; for the act of 1830 forbids any patent thereafter to be issued, except in the name of the original party to the decree; and on proof to the satisfaction of the officers, that the party applying is such original party, or is duly authorized by such original party or his heirs to receive such patent. The original party to the decree being a fictitious person, no title would pass under the patent, if issued. It would still remain in the United States. But Stewart acquired no right whatever under the deed from Bowie, the latter having no interest, that he could convey. In the case of Polk's Lessee v. Wendall, 5 Wheat. 308, it is said by this court, that on general principles, it is incontestable that a grantee can convey no more than he possesses. Hence, those who come in under the holder of a void grant, can acquire nothing.

Upon the whole, we think Stewart was improperly admitted

to become a party: but considering him a proper party, he has shown no ground upon which he can sustain a right to the land in question.

The decree of the court below is accordingly affirmed, with costs.


This cause came on to be heard on the transcript of the record from the superior court for the territory of Arkansas, and was argued by counsel: on consideration whereof, it is decreed and ordered by this court, that the decree of the said superior court in this cause be, and the same is hereby affirmed with costs.