**GALBAN LOBO CO., S. A., v. HENDERSON, Price Administrator.**

**No. 2.**

United States Emergency Court of Appeals.

Decided Sept. 30, 1942.

Writ of Certiorari Denied Dec. 14, 1942.

See 63 S.Ct. 265, 87 L.Ed. ——.

154

Donald Marks, of New York City (Julius B. Baer, of New York City, on the brief), for complainant.

Nathaniel L. Nathanson, Asst. Gen. Counsel (David Ginsburg, Gen. Counsel, Thomas I. Emerson, Associate Gen. Counsel, Ben W. Heineman, Chief, Court Review Branch, Herbert C. Brook, and Linn J. Firestone, Attys., all of Office of Price Administration, all of Washington, D. C., on the brief), for respondent.

Before VINSON, Chief Judge, and MARIS and MAGRUDER, Judges.

VINSON, Chief Judge.

This case is before this court under Section 204 of the Emergency Price Control Act of 1942.[1] The complainant filed its protest, under Section 203 of the Act, 50 U.S.C.A.Appendix § 923, before the Price Administrator on March 2, 1942. The Administrator made his order of dismissal on May 12, 1942.

The case presents this question: Are the protest and review provisions of the Emergency Price Control Act of 1942 available to a person whose complaint is based upon a transaction completed prior to the time the Act became law?

The facts with which we are concerned are: Complainant made a contract on October 27, 1941, to sell sugar to an American refining company. By a supplemental agreement, on December 8, the price of the sugar was to be that prevailing on any day complainant called on or before January 31, 1942. There were two shipments

---

[1] Pub.L. No. 421, 77th Cong., 2d Sess. [H.R. 5990], January 30, 1942, 50 U.S.C.A. Appendix, § 924.

of sugar, the second arriving January 2, 1942. On January 15, 1942, complainant called. Subsequently the refining company refused to pay the price effective on the call date because it claimed that, under the price schedule, complainant was limited to the maximum price prevailing on the date the sugars arrived. Complainant protested under the Act of 1942. The Administrator dismissed.

We present the pertinent evolution of law. On August 13, 1941, Price Schedule No. 16 pertaining to raw cane sugar was issued, effective the following day, by the Office of Price Administration and Civilian Supply,[2] which Office had been set up under Executive Order No. 8734. Price Schedule No. 16 set, inter alia, the maximum price for raw cane sugar in which complainant was dealing. Amendment No. 1 (no relevance here) was issued on October 23, 1941. Amendment No. 2 was issued on January 3, 1942, effective as of January 5th. This Amendment raised the maximum price. Amendment No. 3 was issued January 26, 1942, and became effective on the same day. This Amendment permitted forward pricing to the day the sugar arrived. On January 30th, the Emergency Price Control Act of 1942 was approved. The Act created an Office of Price Administration with a Price Administrator at its head. On February 11th, the Administrator took office under the Act. On February 21st, Price Schedule No. 16, as amended, was reprinted in the Federal Register.

The complainant in its argument stresses the fact that it has made its protest timely and within the period established by the Act. It then argues that the Act covers its complaint, and that the time the transaction occurred is of minor importance.

The Price Administrator in his argument stresses the fact that the transaction was completed before the 1942 Act became effective. He then argues that the Act does not contemplate that its provisions for protest and review are to be applied to transactions which occurred under Executive Order price control.

It can readily be seen that the problem before us is one of statutory construction, and specifically, are the protest and review provisions of the 1942 Act applicable to a transaction which occurred not under the price control of the Act but under price schedules deriving their effect from Executive Order.

The problem arises chiefly because Congress made provision against any hiatus in price control between the time the Executive Order with its implementing price schedules was effective and the time the new law would become effective. This was done, after the bill reached the Senate, in Section 206, 50 U.S.C.A.Appendix § 926. That Section, moreover, is the one most helpful in ascertaining the Congressional intent.

That Section reads: "Any price schedule establishing a maximum price or maximum prices, issued by the Administrator of the Office of Price Administration or the Administrator of the Office of Price Administration and Civilian Supply, prior to the date upon which the Administrator provided for by section 201 of this Act [section 921 of Appendix] takes office, shall, from such date, have the same effect as if issued under section 2 of this Act [section 902 of Appendix] until such price schedule is superseded by action taken pursuant to such section 2 [section 902 of Appendix]. Such price schedules shall be consistent with the standards contained in section 2 [section 902 of Appendix] and the limitations contained in section 3 of this Act [section 903 of Appendix], and shall be subject to protest and review as provided in section 203 and section 204 of this Act [sections 923 and 924 of Appendix]. All such price schedules shall be reprinted in the Federal Register within ten days after the date upon which such Administrator takes office."

This states that the price schedules issued and effective under the old form of price control were to be given life automatically under the Act of 1942, and that such price schedules were to have their new effect on the day the Administrator took office. That turned out to be February 11th. From here on the calendar date will be used.

Certain conditions had to be met for the price schedules to retain their effectiveness. They had to be consistent with the standards of Section 2, 50 U.S.C.A.Appendix § 902; they had to meet the limitations of Section 3, 50 U.S.C.A.Appendix § 903;

---

[2] On August 22, 1941, the name was changed to the Office of Price Administration.

they had to be reprinted in the Federal Register in ten days.[3]

All price schedules effective under Executive Order on February 11th, however, became effective under the Act as though they were issued under Section 2. But no price schedule has any effect under the Act before February 11th. In order to perceive this clearly Section 206 may be re-read, in part, as follows: "Any price schedule * * * issued * * * prior to [February 11th], *shall, from [February 11th]*, have the *same effect as if issued under section 2* of this Act until *such* price schedule is superseded by action taken pursuant to such section 2. *Such* price schedules * * * shall be subject to protest and review as provided in section 203 and section 204 of this Act." [Italics supplied.]

There are, in this Section, three significant instances of word usage which reveal the effect of price schedules under the Act, and the exact time that effect commenced. The first is that any price schedule already issued *shall, from February 11th,* have effect under the Act. This sets the exact date the price schedules are to be effective. The language used also says that the effect is from that time on.

The second group of words shows what kind of effect the price schedules are to have: the same as if issued under Section 2. The price schedules taken over are to have the same effect as price regulations to be issued under Section 2. This comparison also indirectly shows that the price schedules are effective under the Act only on and after February 11th, for no price regulation could have been issued earlier, and the price schedules are to be regarded as if issued under Section 2.

■ The third instance of significant word usage is that "such" is not applied to "price schedules" until the law has made "price schedules" effective under the Act after February 11th. "Such price schedules", then, clearly means price schedules effective under the Act after February 11th, as distinguished from those effective before that time under Executive Order. Such price schedules are the ones subject to protest and review. That answers the precise problem of this case.

■ Such price schedules are subject to protest and review as provided in Sections 203 and 204. These sections dovetail in manifesting the intendment of the Statute that one cannot have relief under the Emergency Price Control Act of 1942 for alleged injury under a price schedule deriving its effect under the old Executive Order.

Section 203(a) provides: "Sec. 203 [§ 923]. (a) Within a period of sixty days after the issuance of any regulation or order under section 2 [section 902 of this Appendix], or in the case of a price schedule, within a period of sixty days after the effective date thereof specified in section 206 [section 926 of Appendix], any person subject to any provision of such regulation, order, or price schedule may, in accordance with regulations to be prescribed by the Administrator, file a protest specifically setting forth objections to any such provision and affidavits or other written evidence in support of such objections. At any time after the expiration of such sixty days any persons subject to any provision of such regulation, order, or price schedule may file such a protest based solely on grounds arising after the expiration of such sixty days. * * * Within a reasonable time after the filing of any protest under this subsection, but in no event more than thirty days after such filing or ninety days after the issuance of the regulation or order (or in the case of a price schedule, ninety days after the effective date thereof specified in section 206 [section 926 of Appendix]) in respect of which the protest is filed, whichever occurs later, the Administrator shall either grant or deny such protest in whole or in part * * *."

Emphasizing those parts particularly pertinent here, we read, " * * * or in the case of a price schedule, within a period of sixty days after the effective date thereof specified in section 206 [February 11th], any person subject to any provision of such * * * price schedule may * * * file a protest * * *. At any time after the expiration of such sixty days any persons subject to any provision of such * * * price schedule may file a protest based solely on grounds arising after the expiration of such sixty days."

---

[3] These price schedules which become effective under the Act may be distinguished, among other ways, from the price regulations and orders, in that the latter must be accompanied by a statement of considerations. Section 2.

The complainant asked at oral argument if the construction we are now taking is correct, why was it necessary to have the second sentence just quoted? The answer would seem to be that there may be many different grounds of protest and a provision in the nature of a statute of limitations was wanted. If one wishes to object to a price schedule having effect under the new law because, for example, it allegedly does not meet the standards of section 2, he must protest within sixty days after February 11th. If after that time conditions arise which make the schedule allegedly unsound the protestant must limit his objection to grounds which have since arisen. He cannot then assert that it was unsound on February 11th. This is in no way inconsistent with holding that a person cannot protest the individual application of a schedule to a particular transaction completed before February 11th. The Statute makes the identical provision for price regulations issued under Section 2. If a regulation is issued, a person has sixty days to challenge it. After that he can only protest on new conditions; he cannot re-open the question of its validity when issued.

Section 203(a) fits our construction of Section 206. We now consider Section 204.

"Sec. 204 [§ 924]. (a) Any person who is aggrieved by the denial or partial denial of his protest may, * * * file a complaint with the Emergency Court of Appeals * * * specifying his objections and praying that the regulation, order, or price schedule protested be enjoined or set aside in whole or in part.

> *     *     *     *     *

"(d) * * * The Emergency Court of Appeals, and the Supreme Court upon review of judgments and orders of the Emergency Court of Appeals, shall have exclusive jurisdiction to determine the validity of any regulation or order issued under section 2 [section 902 of Appendix], of *any price schedule effective in accordance with the provisions of section 206* [section 926 of Appendix], and of any provision of any such regulation, order, or price schedule. * * *" [Italics supplied]

The review section fits our construction of Section 206 as did the protest section. The Act holds together in showing that Congress intended that only price schedules as effective under the Act were to be subject to the remedial provisions of the Act,[4] as distinguished from making the remedial provisions retroactive to embrace complaints under price schedules which derived their effectiveness from the old Executive Order.

■ This is the natural way for law to work. It is not to be presumed that old transactions are to be reviewed under the provisions of new law. If Congress had wanted such unusual action, it would have said so in no uncertain terms. Instead, there is no word in the legislative history—in the committee reports or in the debates—that suggests any desire for any such retroactive application.[5]

To hold as we do that the protest and review sections of the 1942 Act are not available in objecting to price schedules effective under Executive Order, is not to deny this complainant all relief. It denies it relief under the 1942 Act. If complainant had been within the Act, then we would have had exclusive jurisdiction as stated in Section 204. That exclusive jurisdiction, however, is limited to "any price schedule *effective* in accordance with the provisions of section 206 [section 926 of Appendix]". [Italics supplied] Complainant is not contesting this price schedule because it is *effective* under this Act. It is contesting it because it was *effective* during the time of its transaction, and its effectiveness at that time was derived from Executive Order.

■ We in no way indicate the course that may be pursued in challenging a price schedule effective under Executive Order,

---

[4] "Price schedules * * * are similarly subject to the provisions of sections 203 and 204, after their *effective* date under this Act as provided in section 206." [Italics supplied.] Sen.Rep. No. 931, 77th Cong., 2d Sess. [on H. R. 5990] 22.

[5] The subject matter of this Act had long consideration. The President sent his message to Congress on July 30, 1941. A bill was introduced on August 1st. This Act was approved January 30, 1942.

nor do we pass upon the merits of this particular case. We do know that the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix § 901 et seq., closed no court door that would otherwise have been open to complainant.

### Procedural Issues.

We passed two motions to the hearing. The Price Administrator moved to strike Exhibits A, B, and C attached to the complaint. Exhibit B is the protest to the Price Administrator, to which is attached three exhibits. Exhibit A is the order of the Price Administrator dismissing the protest insofar as it is filed under the 1942 Act.

We can appreciate the position of the trail-blazing complainant in the procedure under the new Act in desiring to acquaint the court with the protest proceedings. The Price Administrator, under Section 204(a) of the Act, and also under our Rule 15(a), 50 U.S.C.A.Appendix following section 924, is required to file a transcript of the material portions of the proceedings before him. Exhibits A and B are included in the transcript. We think it the better practice, so far as possible, to avoid attaching to the complaint exhibits as such. Rule 11(b). Should the transcript fail to include any material portions of the proceedings, including exhibits, our Rule 15(d) provides the method for their inclusion here.

Exhibit C is a copy of the Price Administrator's letter to complainant dismissing the protest on its merits under Executive Order price control. In our view, Exhibit C is not relevant to the issue here.

The motion to strike Exhibits A, B, and C is granted.

The motion of the complainant to direct the Price Administrator to correct the transcript by adding thereto Exhibit C under Rule 15(d), or in the alternative to permit the introduction of it as additional evidence under Rule 18, is denied, since, in our view, as stated, Exhibit C is not relevant to the complaint.

The complaint is dismissed.