200 F.2d 564
 DARGEL et al.
v.
HENDERSON et al.
 No. 611.
 United States Emergency Court of Appeals.
 Submitted December 1, 1952.
 Decided December 17, 1952.
 
 Rex K. Nelson, Washington, D. C., for complainants.
 Ed Dupree, General Counsel, and Charles P. Liff, Chief of Appeals Section, Office of Rent Stabilization, Washington, D. C., for respondent James McI. Henderson, Director of Rent Stabilization.
 George L. Turner, Chicago, Ill., for respondent Harold H. Elfenbein.
 Before MARIS, Chief Judge, and MAGRUDER, McALLISTER, LINDLEY and LAWS, Judges.
 MARIS, Chief Judge.
 
 
 1
 This case involves a complaint filed by five tenants occupying housing accommodations owned by Harold H. Elfenbein in the Chicago Defense Rental Area. The complaint seeks to have set aside certain eviction certificates which were issued to Elfenbein by the Area Rent Director of the Chicago Defense Rental Area on May 13, 1952. On June 3, 1952 the complainants filed with the Director of Rent Stabilization, pursuant to Section 18 of Rent Procedural Regulation 2,[1] an appeal from the issuance of these certificates.
 
 
 2
 The appeal was denied by the Director on July 31, 1952. On August 30, 1952 the tenants filed the present complaint. On October 10, 1952 this court entered an order adding the landlord Elfenbein as a party respondent. 199 F.2d 270. Thereafter the respondent Henderson filed a motion to dismiss the complaint for want of jurisdiction. The complainants have filed objections to this motion and it is now before us for disposition.
 
 
 3
 The respondent's basic contention is that this court is without jurisdiction to set aside a rent order, such as the order here in controversy, which was issued under the Housing and Rent Act of 1947, as amended, 50 U.S.C.A.Appendix, § 1881 et seq., prior to July 1, 1952.
 
 
 4
 It is true that from July 1, 1947, the effective date of the Housing and Rent Act, to June 30, 1952 this court had a limited jurisdiction under that Act only to review certain matters of general applicability arising as the result of recommendations of local advisory boards and similar actions upon the initiative of the Director of Rent Stabilization and his predecessor, the Housing Expediter. We did not have the power to consider the validity of rent regulations and orders generally or to set them aside if we found them to be invalid. This situation, however, was radically changed by the enactment on June 30, 1952 of the Defense Production Act Amendments of 1952.[2] By this amendatory act the provisions of Sections 407 and 408 of the Defense Production Act with respect to the protest and judicial review of regulations and orders relating to price control were made applicable to regulations and orders relating to rent control under the Housing and Rent Act of 1947, as amended. These included the provisions of Section 407(a) with respect to the filing of protests, the provisions of Section 408(a) with respect to the jurisdiction of this court to enjoin or set aside protested regulations and orders and the provisions of Section 408(e) [now Section 408(d)] with respect to the jurisdiction of this court to enjoin or set aside unprotested regulations or orders involved in enforcement suits as to which the enforcement court has given leave to file a complaint in this court. Moreover the provisions of Section 408(d) [now Section 408(c)] of the Defense Production Act giving this court exclusive jurisdiction to determine the validity of regulations and orders relating to price controls was extended to the determination of the validity of regulations and orders relating to rent controls under the Housing and Rent Act.
 
 
 5
 The respondent concedes that this court now has jurisdiction with respect to rent regulations and orders but contends that our jurisdiction applies only to such orders as have been issued on or after July 1, 1952 when the amendatory act took effect. We do not so construe that act, however. It seems quite clear from the legislative history[3] that jurisdiction to review rent regulations and orders was given to this court in order to afford to litigants a more convenient and satisfactory procedure for testing the validity of such orders. There is nothing in the legislative history or in the language of the amendatory act which would lead to the conclusion that the new procedure was intended to apply only to regulations and orders issued after the passage of the amendatory act. On the contrary it would seem obvious that the need of litigants for the more convenient procedure which the act was intended to provide was the same with respect to all regulations and orders which were in force after June 30, 1952 regardless of when they were originally issued.
 
 
 6
 The respondent points out that under Section 407(a) of the Defense Production Act protests must be filed within six months after the effective date of a regulation or order or within six months after new grounds of protest have arisen and that the application of this provision to regulations and orders in force on June 30, 1952 which had become effective more than six months prior thereto might result in barring a person aggrieved by such a regulation or order from securing a judicial determination of its validity, in view of the exclusive jurisdiction conferred on this court by Section 408(c). We see nothing unreasonable, however, in the application of a statute of limitations to a person who had failed during the period of six months prior to July 1, 1952 to attack the validity of the regulation or order in question under the judicial procedure then available to him.[4] For this is merely the application to rent regulations and orders of the congressional policy incorporated in Sections 407(a) and 408(a) that regulations and orders shall be immune from attack by the protest and judicial review procedure of those sections after six months unless new grounds of protest arise. Moreover it must be remembered that the Defense Production Act Amendments of 1952 for the first time made protestable under Section 407(a) rent regulations and orders issued under the Housing and Rent Act. This in itself may well be regarded as making previous objections to a rent regulation or order which was in force on July 1, 1952 the equivalent of new grounds of protest available on that date within the meaning of amended Section 407(a). In any event it should be noted that the apparent harshness of the application of Section 408(c) to prior rent regulations and orders is much ameliorated by the fact that a person against whom such a regulation or order is sought to be enforced in a civil or criminal proceeding will still have an opportunity, with leave of the enforcement court under Section 408(d) of the Defense Production Act as it now stands, to test the validity of the regulation or order in this court.
 
 
 7
 We conclude that the provisions of Sections 407 and 408 of the Defense Production Act with respect to the protest and judicial review of rent regulations and orders are applicable to all such regulations and orders in force after June 30, 1952 regardless of the time when they originally went into effect. We think that this conclusion is in accord with the settled rule that changes in procedural or remedial law are generally to be regarded as immediately applicable to existing causes of action and not merely to those which may accrue in the future unless a contrary intent is expressed in the statute.[5]
 
 
 8
 This brings us to the remaining contention of the respondent, which is that the jurisdiction of this court to entertain the present complaint under Section 408(a) of the Defense Production Act must necessarily be based upon the denial by the Director of Rent Stabilization of a protest against the orders under attack and that no such protest was either filed or denied in this case.
 
 
 9
 It is true, of course, that our jurisdiction under Section 408(a) is based upon the denial of a protest and that the filing and denial of a protest is jurisdictional. It is equally true that no paper entitled a "protest" was filed by the complainants in this case with the Director of Rent Stabilization nor was any paper so entitled denied by him. On the contrary the fact is, as we have indicated, that the complainants on June 3, 1952, which was 27 days before the enactment of the Defense Production Act Amendments of 1952, filed with the Director of Rent Stabilization what was termed an "appeal" under the provisions of Rent Procedural Regulation 2 which then regulated the procedure in such matters in the Office of Rent Stabilization. It was not until July 1, 1952 that the Director of Rent Stabilization by the issuance of Rent Procedural Regulation 3[6] authorized the filing of protests against rent regulations and orders. A comparison of the provisions of Regulation 2 regarding appeals with those of Regulation 3 relating to protests shows that except for the matter of boards of review the procedure with respect to the filing, consideration and determination of appeals and protests was substantially identical. Indeed in at least five places in Regulation 3 the protest is specifically referred to as an appeal,[7] thus indicating that the protest authorized by Regulation 3 was regarded as the equivalent of the appeal under Regulation 2. Under these circumstances we think that an appeal taken under Regulation 2 which has been considered and denied by the Director of Rent Stabilization after June 30, 1952 may fairly be regarded as a protest within the meaning of Sections 407 and 408 of the Defense Production Act so that its denial after June 30, 1952 entitled the party aggrieved to file a timely complaint in this court under Section 408(a) of the Defense Production Act.
 
 
 10
 The circumstances of the case before us highlight just how technical and unsubstantial is the contrary view. In this case the complainants' appeal was denied on July 31, 1952. If the action of the Director of Rent Stabilization in then denying the appeal is not to be regarded as the denial of a protest within the meaning of Section 408(a) then certainly his order of denial must be regarded as an order relating to rent controls which is itself protestable within six months under Section 407(a). Since this period of six months will not expire in the case of the complainants until January 31, 1953, they would still have time to protest the order denying their appeal whereupon the Director would be compelled to follow exactly the same procedure as he previously did, ending with the denial of the protest for the same reasons as were set forth in his opinion denying the appeal. A completely useless duplication of procedure would thus have been required in addition to which the complainants would have been delayed for several months in securing any relief to which they are entitled. In the meantime the landlord might well succeed in his attempts to evict them. It is extravagant to think that Congress in its effort to improve the procedure available to parties aggrieved by rent regulations and orders intended to require any such time consuming and frustrating duplication of procedure as this.
 
 
 11
 We accordingly conclude that the complainants' appeal must be regarded for the purposes of Sections 407 and 408 of the Defense Production Act as having been the equivalent of a protest from and after June 30, 1952, when the Defense Production Act Amendments of 1952 became law. It follows that the denial of the appeal on July 31, 1952 must be treated as the denial of the complainants' protest within the meaning of Section 408(a) and that it supports the jurisdiction of this court to entertain the present complaint.
 
 
 12
 The respondent points to Section 79 of Rent Procedural Regulation 3 by which he provided that the appeal procedure of Regulation 2 "shall continue to apply to all cases where the maximum rent regulation or order was issued before July 1, 1952." He argues that this contemporaneous construction of the statute by him should be accorded great weight. We think, however, that the effect of this regulation by the Director of Rent Stabilization was to amend the statute rather than to construe it. It is perfectly clear that the Director of Rent Stabilization is without power by regulation to deprive this court of jurisdiction which the statute has conferred upon us. We accordingly regard Section 79 as not authorized by the statute.
 
 
 13
 An order will be entered denying the motion of the respondent Henderson to dismiss the complaint for want of jurisdiction.
 
 
 
 Notes:
 
 
 [1]
 Issued November 21, 1951, 16 F.R. 11923
 
 
 [2]
 Act of June 30, 1952, c. 530, 66 Stat. 296, 50 U.S.C.A.Appendix, §§ 2107, 2108
 
 
 [3]
 In House Report No. 2177, 82d Cong., 2d Sess., the following appears:
 "Some witnesses who testified before the committee with respect to rent control recommended that authority be granted to test the validity of rent regulations and orders in the Emergency Court of Appeals. It was claimed that at the present time the validity of a rent regulation or order could not be tested unless the person who desired to test it was either brought into court in a civil action brought by someone else, or sued the Rent Administrator in the District of Columbia. In order that the validity of rent regulations and orders may be tested by the persons affected without requiring them either to sue the Rent Administrator in the District of Columbia or be the subject of a civil action instituted by someone else, it was the opinion of the committee that the same procedure now applicable to the review of price control orders and regulations in the Emergency Court of Appeals should apply likewise to the review of the validity of rent regulations and orders. The provisions of the bill which amend sections 407 and 408 of the Defense Production Act of 1950, as amended, would provide for such review. [p. 29]
 "Section 109
 "This section would amend sections 407 and 408 of the Defense Production Act of 1950, as amended, so as to make the protest, review and Emergency Court of Appeals provisions which are now applicable to test the validity of any price control regulation or order likewise applicable in the case of any rent-control regulation or order. The protest and review procedures, and the Emergency Court of Appeals provisions do not now apply to rent-control regulations and orders issued under the Housing and Rent Act of 1947, as amended. [p. 32]"
 
 
 [4]
 See Henry v. Woods, Em.App.1951, 186 F.2d 312
 
 
 [5]
 Sampeyreac v. United States, 1833, 7 Pet. 222, 32 U.S. 222, 238, 8 L.Ed. 665; Hallowell v. Commons, 1916, 239 U.S. 506, 36 S.Ct. 202, 60 L.Ed. 409; Benas v. Maher, 8 Cir., 1942, 128 F.2d 247, 251; State Street Trust Co. v. United States, D.C.D.Mass.1945, 59 F.Supp. 467, affirmed 1 Cir. 151 F.2d 1022; Beatty v. United States, 8 Cir., 1951, 191 F.2d 317, 320; 59 C.J., Statutes, § 719; 50 Am.Jur., Statutes, § 482; 2 Sutherland Statutory Construction, 3d ed., § 2212
 We do not regard our opinion in Galban Lobo Co. v. Henderson, Em.App. 1942, 132 F.2d 153, certiorari denied 317 U.S. 690, 63 S.Ct. 265, 87 L.Ed. 553, as authority to the contrary. That case turned upon the language of the Emergency Price Control Act of 1942, 50 U.S. C.A.Appendix, § 901 et seq., which made it clear that the protest and review procedure of the act applied only to those price schedules previously issued under Executive Order which retained their effectiveness by republication under Section 206 of the Act. Here the protest and review procedure has been extended to "any regulation or order relating to * * * rent controls under the Housing and Rent Act of 1947, as amended" without any limitation.
 
 
 [6]
 17 F.R. 6091
 
 
 [7]
 See Sections 21(a) (1), 21(a) (8) and 27 of Rent Procedural Regulation 3