Parsons, C. J.
The demandant has, in this action, demanded her reasonáble dower in certain lands and tenements described in her writ, of which the said Lee is tenant of the freehold, and of which her late husband, Jonathan Sewall, was, during the coverture, seised in fee simple ; and in her count she has made all the averments necessary to entitle herself to dower, unless those averments are legally avoided.
The tenant pleaded below in chief to the action, on which he had judgment. On the appeal, the parties have submitted the action to the opinion of the Court, upon a case stated.
In the case, the marriage, and the seisin of the husband in fee during the coverture, and his death, are agreed. It is also agreed that the demandant and her husband were born in the late province of Massachusetts Bay, and there lived after the coverture, until the late revolution, at the commencement of which he left the province, and continued a subject of the king of Great Britain until his death, and is the same •Jonathan Sewall named in the act commonly called the conspirators’ bill; and that the demandant was with her husband when he left the province, has always lived with him while he lived, and has never been an inhabitant of either of the United States, or naturalized.
The case then states the title of the tenant under a conveyance made by a committee appointed for that purpose by the legislature, and of whom the demandant has. legally demanded her dower.
It appearing that the demandant’s husband was, during the coverture, seised of such an estate in the premises,
* of which, he could endow the demandant, she must *326 recover, unless the objections made by the tenant should prevail.
He objects, — that the demandant is an alien; and, if not, that her dower was taken away by the conspirators’ bill.
As to the first objection, we do not think it necessary to decide whether the demandant, from the facts disclosed in the case, must be adjudged an alien. For, as it is not pretended that she is an alien enemy, the objection, if admitted, goes only in abatement, to her disability to sue; (a) but cannot be allowed on the merits. For the tenant, by not pleading her disability to sue, has admitted her right to demand dower by writ; which admission he cannot afterwards control or defeat, by evidence repugnant to the right admitted.
This question was settled many years since, in this Court holden in this county.
Thomson sued a real action against Payson, who pleaded the general issue, with a reservation, consented to by the demandant, that he might give in evidence, under that issue, any matters which would avail him if specially pleaded. On the appeal, Payson offered to give in evidence the alienage of the demandant; but it was refused, because, under the reservation, he could give nothing in evidence, which did not go to the merits of the action, unless it might be pleaded in bar. The tenant then insisted that the alienage of the demandant might be pleaded in bar. But after a long discussion, and examination of the books, it was unanimously determined that alien friend could not be pleaded in bar, but only in disability of the demandant to sue.
This decision has been ever since follow'ed, and we think it is founded on correct principles; but, if w'e had any doubts, we could' not overrule it, unless manifestly against law, without great inconvenience. Former decisions, if not furnishing a rule for posterior ones, would be * worse than useless; *327 as they would tend only to mislead and perplex, without furnishing any useful information.
The second objection requires much consideration ; and the force of it must depend on the construction of the conspirators’ bill. This act passed April 30, 1779, before the present constitution of the commonwealth was adopted. After reciting that the several persons named in the act, of which the demandant’s husband is one, had wickedly conspired to overthrow the charter rights of the late province, and to reduce the people under the despotic government of the British king and parliament, and had aided therein,— the act declares that they had justly incurred the forfeiture of all their property, rights, and liberties, holden under and derived from the laws of this state ; and that they should be held to have renounced and lost all civil and political relation to this and the other United States, and be considered as aliens. And in the second section it is enacted, that all their estate, real and personal, of every kind, shall escheat, enure, and accrue, to the sole use of the government, who shall thereupon be deemed to be in the possession thereof, without any further inquiry or adjudication.
It was contended by the counsel for the tenant, that, as dower is not saved to the widow in this section, the demandant can have no claim, as by this statute escheat dower is taken away.
Now, the right of dower in the widow is inchoate in her husband’s lifetime, and he cannot defeat it by any alienation of his estate ; although it is not consummate until she survives him. But it was in the power of the legislature to annul this inchoate right in the-wife, by this act; and whether it be or be not annulled must depend on the intent of the legislature, to be ascertained by a reasonable construction of this section.
By the rigor of the ancient feudal system, the wife of an attainted traitor or felon lost her dower; and this security was admitted to induce the husband to abstain from * those crimes, from a consideration that his wife, as well as his heirs, must suffer for his offence. But to this rigor the genius and temper of our law's is abhorrent. Before the statute we are now considering, the statute of treasons was passed, in which the wife's dower is saved, unless the husband, having fled from justice, should be attainted on outlawry. And in the few felonies in our code of laws, specific punishments are provided by statute, among which are neither corruption of blood nor the forfeiture of dower.
In this statute, the offenders are not proceeded against as traitors or felons, but are expatriated and considered as aliens. And their estates accrue to the government by the escheat created by the statute. It would be a construction extremely hard to admit that *328 the legislature intended to punish these offenders with greater severity than that with which traitors and felons are punished ; and their intent is very clear to deprive offenders of their own property, of every kind, and not to affect the rights of others.
But the wife had an inchoate right to dower, which is not expressly taken away, and she is not involved in her husband’s offence. Neither can the reason of the feudal rigor apply in this case, for the offence was committed before the statute, which applies only to this particular offence, and has no tendency to operate hereafter on other husbands in terrorem.
And it may be further remarked that our laws recognize but two cases of escheat; for corruption of blood is not here a consequence of attainder for felony. One of the cases is when an alien purchases, and cannot hold against the government; and the other is, when a citizen dies seised of lands without heirs and intestate. In the former case, the wife shall not have dower, for her husband was never so seised, as against the government, as that he could endow her; and in the latter case, she is unquestionably entitled to dower.
*The reason why the widow of an alien shall not have dower, cannot apply to the present casé ; for, during the coverture, her husband was so seised that he might have endowed her. And had the statute only expatriated him, without declaring the escheat, there would be no ground for excluding her from her dower. Nor can I be satisfied that the escheat of the husband’s estate, alone contemplated in the act, was intended to affect the inchoate right of an innocent wife, by depriving her of her dower.
That the legislature regarded existing liens, is manifest from a subsequent act passed March 2, 1781; for, in the second section, provision is made for attaching creditors, by giving them, in consequence of their attachments, a priority in the payment of their debts before the other creditors. (1) The legislature intended generally, that the government, in taking the estate of the offender, should hold it subject to all claims by law existing against it. As it was liable for the payment of all his debts, the law says that all his debts shall be paid out of it. And why ought we not to conclude from the generality of the words of the escheat, that when the lands were subject to the widow’s right of dower, the government should hold them subject to that right ?
This opinion is formed from the construction of the second section of the act, without reference to any other parts of it. If, by *329 such reference, another construction should be apparent, it must be adopted.
The counsel for the tenant has relied also on the fourth section, as deciding the construction of the second section in his favor. The fourth section provides that any wife or widow of any of the offenders, who shall have remained within and-under the jurisdiction of any of the United States, shall be entitled to the improvement of one third of his real and personal estate, after the payment of his debts, during her life and continuance within the United States. And her dower therein shall be set off by the judge of probate, in like manner as it might have been, if her husband had * died intestate within, and a liege subject of, the United States.
The argument from this section is, that this special provision for certain of the wives and widows of the offenders, by a reasonable inference, excludes all other wives and widows from a similar provision.
This argument would have much weight, if these resident wives and widows would have been entitled to these provisions, on the construction I have given to the second section, without the aid of the fourth section ; for then this last section would have been unnecessary.
But it is manifest that, admitting dower not taken away by the second section, yet the fourth was necessary. For as to wives, while their husbands were living, they could have no claim to the use of any of their husband’s real or personal estate; and as to widows, the government being the tenants of the freehold, they could have no remedy at law to obtain an assignment of dower, but must have relied on the justice of the government.
The dower which the judge of probate is authorized to assign must, I think, extend to the third part of the real estate, which the wife was entitled to improve. For in the statute of 1781, by which the lands of the conspirators were directed to be sold, there is, in the second section, a saving of one third to be allotted as dower, for the support of the wife or widow, remaining in the commonwealth, during her life; and afterwards it is to be sold.
I have also considered the fifth section of the conspirators’ bill, with respect to the construction of the second section. Here provision is made ' for the lineal poor relations of the person whose estate is adjudged to escheat, when he shall have no wife or widow entitled, by virtue of that act to any part of his estate. The words “ entitled by virtue of that act” must necessarily relate to the provision made for resident wives and widows in the fourth section. And if that section does not furnish a construction by which dower *330 is taken away by the second section, the fifth section cannot have that effect. The condition * annexed to the provision for lineal relations was introduced on the supposition that, if there were a resident wife or widow, she would take care of such relations. Both the fourth and fifth sections evince the humanity of the legislature towards those persons in the state, who stood in need of relief, having been abandoned by their husbands or fathers, without involving any future claim to dower by wives or widows then absent.
But the demandant’s counsel has argued from this fourth section, that dower is not taken away, in any case, by the second section. The legislature have provided for wives and widows remaining here, because they wanted immediate support; but they were not more innocent and unoffending than those who, .obliged by the authority of their husbands, did not abandon them, but followed their fortunes into another country. And although it is necessary to distinguish between the innocent and the guilty, yet the rights of all persons innocent are entitled to protection without distinction. But the support and maintenance of wives and widows could not be reasonably claimed of the government.
The sale directed by the last-mentioned act, without reserving one third for wives or widows absent, was certainly regular; for although the right to dower is inchoate during the coverture, yet it is contingent; and unless the wife survive her husband, and claim her dower of the tenant of the freehold, she can have no remedy. This contingent right, therefore, could be no cause for stopping the sale of the land.
Upon the whole, unless the dower was taken away by express words, or by a necessary implication, it is my opinion that the legislature cannot be considered as having intended to take it away ; but, on the contrary, that the legislature intended that the statute should be construed agreeably to the humane character of our laws, which have studiously avoided to involve the innocent with the guilty. And as there are no express words nor necessary implication, * by which the dower is taken away, the escheat must operate only on the husband’s estate and interest, he being the only delinquent; and not on the inchoate right of dower in the wife, who was in no fault. By this construction, the unoffending wife is not made to suffer for the offence of her husband.

Per Curiam

Judgment for the demandant.

 [Martin vs. Woods, post, 377. — Ainsley vs. Martin, post, 454. — And in Langdon vs. Potter, (11 Mass. Rep. 316,) Jackson, J., said, “ The plea of alien friend is always in abatement.” But in his book on real actions, (p. 60,) he says, u The common opinion with us has been that this fact (alienage) must be pleaded in disability, and never in bar. Yet this plea, if supported, shows that the demandant cannot maintain any action at any time for the land in question, and thus answers exactly to the common description of a plea in bar; and even in the times of ancient strictness, it has been said that it might be pleaded either to the action or to the person. — Thel. Dig. L. 15, C. 4, § 4.-32 H. 6,23.-10 H. 7. —11 Bro. Bar. 64,102, — Doct.plac. 298.— In the case of Hutchinson vs. Brock, (11 Mass. Rep. 119,) it is suggested by C. J. Sewall, that, in a real action, alienage may be pleaded either in abatement or in bar, and the reason assigned is, because it shows that1 for that cause of action the demand-ant had no right to recover; * that is, the alienage produces not merely a present disability to bring or to maintain an action, but a perpetual bar of the supposed right of action." He concludes by saying that he presumes it would now be decided that alien friend might be pleaded in bar to a real action. — Ed.]

 Vide Mass. Laws, vol. ii. 1062.