## CHARLES BENDER V. T. H. CRAWFORD.

1. The Constitution of this State, of 1869, declares, in the forty-third section of its twelfth article, that " the statutes of limitation of civil suits were suspended by the so-called act of secession of the twenty-eighth of January, 1861, and shall be considered as suspended within this State until the acceptance of this Constitution by the United States Congress." *Held*, that this constitutional provision is neither an *ex post facto* law nor a law impairing the obligation of contracts ; nor does it conflict in any other respect with the Constitution, laws or treaties of the United States.

2. The people of Texas, through their Constitutional Convention, and at the ballot box, in voting upon the adoption of the Constitution, had both the right and the power to disregard even vested rights, provided that in so doing they did not infringe the Constitution, laws or treaties of the United States ; and if they have clearly expressed in their Constitution their intention so to do, the courts of the State are bound to respect and enforce their will.

3. The limitation laws of the State of Texas affect the remedy only, in which a right cannot vest ; and, therefore, no objection founded on vested rights can be maintained against the forty-third section, twelfth article, of the State Constitution of 1869, declaring the limitation laws to be suspended until the acceptance of that Constitution by the Congress of the United States.

4. On promissory notes due in 1859, suit was brought in July, 1869, and the limitation of four years was set up as a defense to the action. *Held*, conformably to the foregoing rulings, that the limitation laws being suspended from January 28, 1861, until after the commencement of this suit, they could constitute no bar to the recovery of the plaintiff.

5. In this case the court reviews the leading authorities on the important questions involved, and quotes with marked approval the opinion of this court in De Cordova v. The City of Galveston, (4 Texas, 470,) delivered by Chief Justice Hemphill. The contrary views expressed in Story's Administrator v. Runkle (32 Texas) were *obiter dicta*.

APPEAL from Comal.    Tried below before the Hon. G. H Noonan.

Crawford brought this suit on the twenty-sixth of July, 1869, on two promissory notes of the defendant, Bender, one for $209, made September 22, 1858, and due four months after date, and the other for $612, made September 7, 1859, due at ninety days.

The statute of limitations of four years was set up by exceptions to the petition. The plaintiff treated the exceptions as an answer, and filed a replication alleging that the defendant was absent from this State until the fall of 1866, and on sundry subsequent occasions, and that in May, 1865, and in August, 1866, he had in writing promised and obligated himself to pay the notes sued on. These allegations, however, do not seem to have been sustained by the proof. The case was submitted to the court without a jury, and the defendant, Bender, being called to the witness stand by the plaintiff, testified that he came to Texas in the spring of 1865 and had been out of the State but three times since, covering in all but forty days. Though the judgment of the court below, in favor of the plaintiff, does not recite the ground upon which it was based, it would appear from the state of the proof that it was rendered on the constitutional provision alone.

*Wælder & Upson* and *John P. White*, for the appellants.— Assuming that the ordinance of 1866 suspended the operation of the statute from March 2, 1861, until September 2, 1866, one of the notes sued upon in this case was barred on or about the fifteenth of July, 1868, and the other was barred on or about the seventh of June, 1869; both being clearly barred under the laws then in force prior to the institution of this suit.

Such being the case, could any power of the State, whether it be exercised by a convention or by the Legislature, revive these claims which, by the operation of the statute, had lost their vitality, without infringing that provision of the Constitution of the United States which prohibits the State from passing laws impairing the obligation of contracts?

That contracts are governed by the laws in existence at the time they are entered into, and that parties contract with reference to those laws, is a doctrine which has been often and authoritatively announced. And while it is well settled, as stated in the original brief, that laws affecting the remedy are not generally within the scope of laws impairing the obligations of contracts, yet it is as well settled that a law affecting the remedy may so interfere with the right as to destroy the right itself—and this, we submit, would be the effect of the provision under consideration, if sustained by the court so as to apply to claims already barred at the date of its passage and before suit brought.

Justice Cooley, of the Supreme Court of Michigan, and lay professor of law in the University of that State, in his well conceived work on Constitutional Limitations, uses this language: " As to the circumstances under which a man may be said to have a vested right to a defense, it is somewhat difficult to lay down a comprehensive rule. He who has satisfied a demand, cannot have it revived against him, and he who has become released from a demand by the operation of the statutes of limitations, is equally protected. In both cases the right is gone and to restore it would be to create a new contract for the parties—a thing quite beyond the power of legislation." (Cooley's Const. Lim., 369.)

On page 362 the same author says: " A vested right of action is property in the same sense in which tangible things are property, and is equally protected against arbitrary interference." Is not a bar acquired by the statute of limitations as much a vested right, and as well protected from like interference?

Again: " When the period prescribed by statute has already run, so as to extinguish a claim, which one might have made to property in the possession of another, the title to the property, irrespective of the original right, will be regarded as vested in the possessor, so as to entitle him to the same protection that the owner is entitled to in other cases. A subsequent repeal of the

limitation law could not be given a retroactive effect, so as to disturb this title. The right being gone, of course the remedy fell with it, and as there could be no remedy without a corresponding right, it was useless for the Legislature to restore the former, so long as it was prohibited by the Constitution from interfering or meddling with the latter." (Cooley's Const. Lim., 365.)

The author here refers to a number of authorities to sustain the doctrines laid down in his text.

"A statute which, without some controling public necessity and for public objects, seeks to affect or interfere with vested rights of private property, is equally beyond the true limits of the legislative power." (Sedgwick on Stat. and Const. Law, 177.)

We think, then, that upon the authorities cited in this and original brief, we may safely submit that the ruling of the court below was erroneous, and that the judgment should be reversed.

We ask the court, nevertheless, to excuse us for making extensive quotations from the case of Story's Administrator v. Runkle, decided by this court at its Austin term, 1869, which, upon a somewhat similar issue, would seem to dispose of the question under discussion in the present case. We quote at length for the reason that the case referred to is not yet reported or published. In delivering the opinion of the court Justice Lindsay says:

"It is not questioned that the political power may alter, change, modify or abolish any civil remedy which may exist at the time of its action, provided it does not entrench upon rights inalienably vested. It may enlarge or contract the scope of any statute of limitations. It may abolish such statutes altogether, and allow parties to enforce their claims according to the principles of natural justice in the civil tribunals of the State. But after the time has already fully elapsed within which the absolute right to avail themselves of the bar of the statute, is not conceded, * * * * . * * after its lapse, even in the cases wherein the statutes must be pleaded to be available, neither

conventions nor legislatures can, without positive usurpation and tyranny, deny a citizen the exercise of such right.     *     *     *

" Like the legislatures created by them they (conventions) must act in subordination to the great republican conception of our institutions, as well as to the National Constitution, which interdicts all power to the State, whether in its conventional or legislative action, to impair contracts." (Story's Administrator v. Runkle, Austin term, 1869.)

The court in referring to the case of Jackson v. Lampshire, 3 Pet., 280, say : "It is also distinctly affirmed in the same and other cases in that court, as well as in a number of the courts of our sister States, with which it is needless to encumber this opinion, that ' if the Legislature of a State should pass an act by which a past right of action should be barred, and without any allowance of time for the institution of a suit in future, it would be difficult to reconcile such an act with the express constitutional provisions in favor of the rights of private property.' *A fortiori,* it would be difficult to reconcile the passage of such an act reviving rights already barred, with those constitutional provisions. We regard the exercise of such a power as utterly subversive of civil liberty, as guaranteed under republican institutions, and therefore cannot recognize the soundness or the just policy of such a provision in a law of limitations."

What is said above, is based upon the hypothesis, that the convention of 1869 intended to revive claims which were then fully barred. We submit, however, that it is by no means clear that such was the intention of the Convention in engrafting the provision in question upon the Constitution.

We further beg leave to refer to the decision just made by the United States Circuit Court, now in session in this city, in the case of the Memphis and El Paso Railroad Company v. The Governor, in which it is held that the railroad company cannot be deprived of its vested rights, under its charter, by either convention or Legislature.

*John Ireland* and *Bowers & Walker*, for the appellee.

WALKER, J.—The question for our consideration in this case must be settled by the forty-third section of the twelfth article of the Constitution of 1869, which reads as follows:

" The statutes of limitation of civil suits were suspended by the so-called act of secession of the twenty-eighth of January, 1861, and shall be considered as suspended within this State until the acceptance of this Constitution by the United States Congress."

The Constitution, laws and treaties of the United States constituted the only boundary line beyond which the people of Texas could not go in declaring what should be their constitution and fundamental law.   Section ten, article one, of the Constitution of the United States inhibits the States from passing any bill of attainder, *ex post facto* law, or law impairing the obligation of contracts ; and it would seem that whilst the States are forbidden to pass any law violating the obligation of contracts, the power to do so is not denied to Congress.

The record shows, and the argument on either side admits, that but for the clause in our State Constitution, already quoted, the collection of the notes sued on would be barred by the laws of limitation, and this, indeed, is the only question for our examination.   It is novel to some extent.   The constitutionality of statutes is often called in question, but the legality of a State constitution seldom, after the State has been admitted by Congress.   And we are unable to find the question involved here more nearly adjudicated than it has been in our own State.   The case of DeCordova against the city of Galveston, 4 Texas Reports, page 470, is so closely analagous to the case at bar that we shall feel authorized, not only in adopting the opinion of the court in that case, but we shall to a great extent adopt the reasoning and the authorities which led to the opinion.

It will not be contended that the forty-third section of the twelfth

article of our own Constitution is within the definition of an
*ex post facto* law. The words *ex post facto* imply that some-
thing has been done after some other thing, in relation to the
latter. The use of these words as descriptive of a law is nom-
inally confined to the criminal law. Such a law is defined to be
one which renders the act punishable in a manner it was not when
committed. It extends to laws passed after the act, affecting the
person by punishment for the act in his person or estate. (See
3 Dallas, 386; 1 Blackf. Ind. R., 193; 2 Pet. U. S. R., 413;
1 Kent's Com.) It is said that the prohibition in the Constitu-
tion of the United States against *ex post facto* laws applies ex-
clusively to criminal or penal cases, and not to civil cases. (Sedg.
Con. Law, 356; 2 Pick. R., 172; 11 Pick. R., 28; 2 Root R.,
350; 5 Monr., 133; 9 Mass. R., 363; 3 N. H. R., 475; 7
John. R., 488; 6 Binn. R., 271; 1 J. J. Marsh., 363; 2 Pet.
R., 631.) The terms retrospective and *ex post facto* are some-
times applied as synonymous, and retroactive laws are supposed
to be prohibited under the inhibition of *ex post facto* laws; but
the power to pass retrospective laws, properly so-called, does exist
in the several States, and they are obligatory if not forbidden by
their own constitutions. (4 S. & R., 364; 3 Dall. R., 396; 1
Bay. R., 179; 7 John. R., 477; 4 S. & R., 403; 1 Binn. R.,
601; 3 S. & R., 169; 2 Cranch. R., 272; 2 Pet., 414; 8 Pet.,
110; 11 Pet., 420; 1 Bald. R., 74; 5 Penn. St. R., 149.)
An instance may be found in the laws of Connecticut. In 1795,
the Legislature passed a resolve setting aside a decree of a court
of probate disapproving of a will, and granted a new hearing;
and it was held that the resolve not being against any constitu-
tional principle in that State, was valid. (3 Dall., 386.) And
in Pennsylvania, a judgment was opened by the act of April,
1837, which was holden by the Supreme Court to be constitutional.
(2 Watks. & Serg., 276.) Laws should never be considered as
applying to cases which arose previously to their passage, unless

the Legislature or people have clearly declared such to be their intention. (12 Law Reports, 352 ; 7 Johnson R., 477; 1 Kent Commentaries, 455; Taylor Civil Law, 168, Code 1, 14, 7 ; Bracton, bib. 4, fo. 228 ; Story Cons., § 1393; 1 McLean Rep., 40 ; 1 Meigs Rep., 437 ; 3 Dall., 391; 1 Blackf. R., 193; 2 Gallis. R., 139; 1 Yerg. R., 360; 5 Yerg. R., 320; 12 S. & R., 330.) These authorities are cited from Bouvier's Law Dictionary; but we have examined them in application to the present case, and now feeling that we can more forcibly present our own opinion and reasoning by adopting the language and opinions of the learned Chief Justice, and the authorities referred to by him, than we otherwise might be able to do, we shall make no apology for introducing here lengthy extracts from the opinion of Chief Justice Hemphill, delivered in the case already cited from 4 Texas Reports.

A distinction has always been taken between the obligation of a contract and the remedy for its enforcement; and it has never been doubted but that the Legislature may vary " the nature and extent of the remedy, so that some substantial remedy be in fact left." A State may at pleasure regulate the modes of proceedings in its courts, in relation to past contracts as well as future. It may, for example, shorten the period of time within which claims shall be barred by the statutes of limitations ; or exempt the necessary implements of agriculture, or the tools of mechanics, or articles of necessity in household furniture, from executions. Regulations of this description have always been considered, in every civilized community, as properly belonging to the remedy, to be exercised or not by every sovereignty, according to its own views of policy and humanity, and as not impairing the obligation of the contract. (Bronson v. Kinzie et al., 1 How. U. S. R., 315.) In this case the learned judge, adopting a most logical parity of reasoning, fortifying his argument by the highest authorities, decided that the term " retrospective " in the bill of rights was designed

to embrace laws which are not included in the description of *ex post facto* laws, or laws impairing the obligation of contracts, but which destroy or impair vested rights or rights to do certain actions or possess certain things, according to the laws of the land. Laws which affect the remedy merely are not within the scope of the inhibition against retrospective laws, unless the remedy be entirely taken away, or be encumbered with conditions that would render it useless or impracticable. There cannot be a vested right to any particular remedy, until suit be commenced at least. Whether statutes of limitation affect the remedy merely, or pertain to the contract, is not now an open question.

In Gautier against Franklin, decided by the same learned court in 1 Texas Reports, page 732, the Chief Justice, in discussing the nature and object of statutes of limitation, uses the following language: "If statutes of limitation can in any just sense be regarded as forming any part of the contract, their operation should be admitted wherever the contract is litigated. But they are not so considered. In making contracts the future time (if any) which is in contemplation of the parties, is the day of the maturity of the contract, and not that on which, by lapse of time, exemption may be claimed from its performance. A contrary doctrine would impute to the obligee a contemplated evasion of his obligation from the inception of his agreement, and would, in the language of Lord Brougham, turn a protection against laches into a premium for evasiveness." (Story's Conflict of Laws, p. 482.)

The limitation of the time within which the right of action upon any contract may be barred forms no part of the obligation of the contract, nor does a right to resist the due execution of the contract exist at the time it is made; this is simply a right which grows out of the negligence or laches of the party having the beneficial interest in the contract, and that the time within which such laches shall become a bar may be curtailed or extended at any time by the Legislature before the bar has actually taken place,

XXXIII—48

has not been doubted ; and why the power to extend the time within which suits may be brought should be denied, even to the Legislature, when there is no constitutional inhibition, is to us a matter of some astonishment. But that a people framing and adopting their fundamental law should be denied this power is still more remarkable. We have already stated in this opinion that the only perimeter or boundary line which circumscribes the power of the people of Texas was the Constitution, laws and treaties of the United States, unless, indeed, they had incorporated in their Constitution some principle in derogation of the law of nature or the law of nations ; and with a Constitution so tainted with barbarism we never should have found our way a second time into the great American Union. And it must not be forgotten that while our Constitution was framed by a convention of men, among whom were some of the best and most accurate legal scholars in the State, it has since passed the ordeal of the ballot box triumphantly. It has passed the scrutiny of a House of Representatives, in which are such legal minds as those of Bingham, Orth, Lawrence, Schenck, Butler and Garfield ; it has received the sanction of a Senate where are Trumbull and Sumner, Sherman, Carpenter and Thurman, some of the brightest ornaments of the profession on either continent, who gave it the approbation of their wisdom and learning. These men were not forgetful of the obligations imposed upon them by the fourth section of the fourth article of the Constitution of the United States : "The United States shall guarantee to every State in the Union a Republican form of government." And this, we think, ought to be a sufficient answer to the *obiter* remark of the learned judge in Story's Administrator against Runkle, quoted in appellant's brief thus : "Like the legislatures created by them, they (conventions) must act in subordination to the great republican conception of our institutions, as well as to the National Constitution, which interdicts all power to the State, whether in its conventional or legislative

action, to impair contracts." To apply the doctrine thus laid
down in this case is to assume that the forty-third section of the
twelfth article of our Constisution does impair the obligation of
contracts, which we have already shown by abundant authorities is
not the case.

It is hardly fair to apply the *obiter dictum* of the learned judge
in the case of Story's Administrator against Runkle, to this case.
The only question involved in that case was as to the time within
which a writ of error could be sued out.    And the court afterwards,
(of which the learned judge was a member,) in the case of Maloney
against Roberts, decided at the Tyler term, 1869, overruled the
case of Story's Administrator against Runkle.   The case referred
to by appellant in 3 Peters R., Jackson against Lampshire, is per-
fectly reconcilable with the authorities herein referred to, and
found in 1, 2 and 5 Texas.   The Secession Convention of January
23, 1861, was a body of revolutionists, in rebellion to the govern-
ment of the United States.    Among the members of that Conven-
tion were able lawyers; it may be that they were acting in disre-
gard of the laws of the country, but they assumed to suspend the
limitation law; and the Convention of 1866 declared that the time
intervening between the second of March, 1861, and the second of
September, 1866, should not be computed in the application of the
statutes of limitations.   Now, if there be a lawyer in the State of
Texas who, regarding these ordinances as valid and binding, will
nevertheless give it as his opinion that the forty-third section of
the twelfth article of our Constitution must be held invalid for
want of power in the people, acting in harmony with the laws of
the country and with the approbation of the Congress of the
United States, that opinion can be held of little worth in this
court.

We should not do justice to the very learned and able brief of
counsel for appellee, were we to stop here in the decision of this
case.   In the case already cited from 1 Texas, the court reasons

thus : If statutes of limitation could in any just sense be regarded as forming a part of the contract, their operation should be admitted wherever the contract is litigated. But they are not so considered.

If, then, the bar of limitation does not enter into the consideration of the parties, it is no right contracted for, but is solely dependent upon such laws as the Legislature or the people in their sovereign capacity may enact. In the case of McMullen v. Hodge, reported in 5 Texas Reports, on page 73, the court hold this strong language : " It would be in the power of such convention to take away or destroy individual rights, but such an intention would never be presumed ; and to give effect to a design so unjust and unreasonable would require the support of the most direct, explicit, affirmative declaration of such intent."

This was a case which arose under the Constitution of the Republic, and this language was applied to the power of the convention which framed it.

But, to return to the question of retroactive laws, we refer to the case of Oliver Lee & Co.'s Bank, decided in the New York Court of Appeals, reported in 21 New York Reports ; the opinion was delivered by Justice Denio. On page 12 we find the learned judge using the following language : " The defendant's counsel insists that we should not construe the clause so as to disturb vested interests, unless compelled by language which would not admit of any other meaning. But we are not to interpret the Constitution precisely as we would an act of the Legislature. The Convention was not obliged, like the legislative bodies, to look carefully to the preservation of vested rights. It was competent to deal, subject to ratification by the people, and to the Constitution of the Federal Government, with all private and social rights, and with all the existing laws and institutions of the State. If the Convention had so willed, and the people had concurred, all former charters and grants might have been annihilated. When, therefore, we are seeking for the true construction of a constitutional provision, we are constantly ·

to bear in mind that its authors were not executing a delegated authority, limited by other constitutional restraints, but are to look upon them as founders of a State, intent only on establishing such principles as seemed calculated to produce good government and promote the public happiness, at the expense of any and all existing institutions which might stand in their way. The rule laid down in Dash°v. Van Bleck, 7 John., 477, and other cases of that class, by which the courts are admonished to avoid, if possible, such an interpretation as would give a statute a retrospective operation, have but a limited application, if any, to the construction of a constitution."

Perhaps it is useless for us to attempt to fortify the learned authorities already cited by additional references, but we will nevertheless call attention to such as are cited in the brief of appellee's counsel : Sections 166, 167, 168, Smith's Com. on Statutes and Constitutional Law; Story on Conflict of Laws, § 582, and notes ; Sedgwick on Constitutional Law, par. 411, 412, 682, 683, 692 and 693; Angel on Limitations, §§ 66, 67 and notes, 4 Connecticut Reports, Goshen against Stonington. The opinion in this case was pronounced by Chief Justice Hosmer and is lengthy, but very able and well worthy of consideration. The chief point decided with which we have here to do, is this : "That a law is explicitly retrospective and may affect the rights of individuals does ·not authorize the judiciary to declare it void, if it be just and reasonable and conducive to the general good." This was a question arising under a statute, passed by a Legislature of a State whose Constitution did not expressly inhibit retroactive laws. How much greater force is the constitution of a State enacted by the people, and is the utterance of their will and their power, entitled to, than the act of a Legislature which is subordinate to the Constitution. In 22 New York Reports, on page 12, in the matter of the Reciprocity Bank, Chief Justice Comstock refers to the case of Oliver Lee & Co.'s Bank with approbation, and affirms the same doctrine.

Reference is made in the brief of appellee to the learned work of Judge Cooley, of the Supreme Court of the State of Michigan. This author says the Legislature may suspend the operation of the general laws of the State, but when it does so the suspension must be general, and cannot be made in individual cases or for particular localities. The note on this passage reads thus : " That the statute of limitations cannot be suspended in particular cases while allowed to remain in force generally, (see Holden against James, 11 Mass., p. 396 ; Davison against Johonnot, 7 Met., 393,) and that the general exemption laws of the State cannot be varied for particular cases or localities." (See Bull against Conroe, 13 Wis., p. 238–244.) This authority certainly strongly fortifies our view of this case ; and what is said by the same author on pages 362 and 369, in no way weakens the conclusion to which we have arrived. The argument as maintained by Judge Cooley, as to vested rights being taken away by a statute of limitation, is fully met and answered by the able authorities we have already cited.

We cannot see what application can be made to this case of the opinion recently delivered in the Circuit Court of the United States, in the case of Grey against Davis and Kuechler. There the court held that the charter granted by the State to the Memphis and El Paso Railroad Company was a contract which, upon the organization of the company and compliance with the terms of its charter, would be protected by that clause of the Federal Constitution which inhibits the States from passing any law impairing the obligation of contracts.

It might be foreign to the object and duty of the court to enter into any detailed history of the times within which the statute of limitations has been suspended by the forty-third section of the twelfth article of the Constitution. But they who talk about vested rights in the bar of limitations should at least remember the times in which we have been living; and those who think our Constitution is not republican, nor in accordance with the great

republican conception of our institutions, should remember that from the second of March, 1861, to the twenty-ninth of March, 1870, we had no republican government in Texas. Four years of that period were one of bloody and unrelenting war. From 1865 to 1870 we were a military government; he who gained a vested right in the statute of limitations during at least a portion of that period, gained it only because *inter arma leges silent.* Vultures and wolves gain vested rights when armies are slaughtered, if these *be* vested rights.

We are therefore led to declare that the forty-third section of the twelfth article of the Constitution of 1869 is not to be regarded as an *ex post facto* law, nor is it a law impairing the obligation of contracts. That the people of Texas, through their Constitutional Convention, and at the ballot box in voting upon the adoption of the Constitution, had both the right and the power to disregard even vested rights, if they deemed it advisable; and if they have clearly expressed their intention so to do, the courts of the State are bound so to regard it. That the limitation laws of the State of Texas affect only the remedy, in which a right cannot vest, and therefore the declaration in the Constitution last referred to is not objectionable on the score of vested rights. The judgment of the district court is therefore affirmed.

                                                        Affirmed.