D. McGREGOR AND A. J. BURKE v. PAUL GOLDAMMER.

(February 17, 1880.)

LIMITATION — CONSTITUTION OF 1869 CONSTRUED.— The fourteenth
section of the general provisions of the constitution of 1869, which
provided that "married women, infants and insane persons shall
not be barred of their rights of property by adverse possession, or
law of limitation, of less than seven years from and after the re-
moval of each and all of their respective legal disabilities," oper-
ates prospectively only, and only those that were under such
disabilities at the time the constitution went into effect are entitled
to the benefit of said provision.

APPEAL from Harris county. Opinion by WALKER, P. J.

STATEMENT.— The question of controlling consequence to
the rights of the parties to this suit arises out of the con-
struction to be placed upon the fourteenth section of
the general provisions of the constitution of 1869, which
reads as follows: "The rights of married women to their
separate property, real and personal, and the increase of
the same, shall be protected by law; and married women,
infants and insane persons shall not be barred of their
rights of property by adverse possession, or law of limita-
tion, of less than seven years from and after the removal of
each and all of their respective legal disabilities."

The first clause contains an instruction to the legislative
department requiring the enactment of proper laws for the
purpose therein named, and the remaining portion of the
section is a limitation upon the power of the legislature to
prescribe a bar against the classes of persons therein pro-
tected, of a shorter period than seven years from the period
of the removal of their respective disabilities, and, at the
same time, is a complete rule governing the subject to which
it applies without needing the aid of the law-making power
to give it immediate effect.

OPINION.— The construction is urged, by counsel for the
appellee, that the limitation clause, as it may, for conven-

ience be termed, has a retrospective operation in its application to the defense or plea of the statutes of limitation, and that any person against whom the statutes of limitation shall be pleaded after the adoption of the constitution of 1869 is entitled to have the period of adverse possession which is pleaded against him computed at seven years, commencing from the date of the removal of the disability protecting him, irrespective of the fact that at the date of the adoption of the constitution his pre-existing disability had been removed. Authority is cited (De Cordova v. The City of Galveston, 4 Tex., 470) by the counsel in his brief to support the proposition that acts of limitation apply as well to causes of action existing preceding their enactment as to those accruing subsequently. It cannot be questioned but that laws which (as, for instance, statutes of limitation) affect the remedy merely are not within the scope of the inhibition against retrospective laws unless the remedy be entirely taken away, or be incumbered with conditions that would render it useless or impracticable; there cannot be a vested right to any particular remedy. It has been held that even when a suit has been definitively decided and no appeal taken, and the time for appealing expired, that a right of appeal can be given by a statute passed for that purpose. United States v. Samperyac, 7 Peters, 222; Hempstead's Arkansas C. C. R., 119. The unquestionable, conclusive operation of laws pertaining to the remedy to affect and determine the rights of parties which may have previously accrued and have become the subject of judicial determination is illustrated by abundant authority everywhere, and upon very numerous subjects testing the application of the principle.

The question here for solution, however, is not whether a law of limitation would be applicable to past as well as prospective conditions or relations when falling under the operation of a general law, but it rather is, whether any such general rule has, in fact, been prescribed, which, according to its terms and intent, embraces within its operation

persons other than those who meet the description given in the law at the time of its enactment. In a word, is the clause in question a rule or law prescribing, in effect, that where the statute of limitations is relied on as a defense, where the party to be affected by the lapse of time has been under disability during any portion of the period of adverse possession of the party pleading the statute, that not less than seven years of such possession after the removal of such disability, regardless of the time when the disability may have determined, shall bar the right of action? If it admits of such an interpretation, it follows, from the concession which has been allowed respecting statutes affecting the remedy, that a remedial rule of that kind would be applied to all cases arising after the law went into force, and would not be inhibited as a retrospective law. Such, however, is not the purport of that clause; it is not such a rule or declaration of law applicable to the subject of defense under the plea of the statutes of limitation. It is, however, the declaration of a rule of law, and fixing a right in favor of the classes of persons embraced within it, and who, when the constitution shall take effect, and thereafter, being married women, infants or insane persons, shall not be barred of their rights of property by adverse possession, or law of limitation, of less than seven years from and after the removal of each and all of their respective disabilities.

It was not the purpose of the framers of the constitution, in thus establishing the fundamental law, " intended mainly to contain the principles upon which the government is founded, regulating the division of the sovereign powers, and directing to what persons each of these powers is to be confided, and the manner in which it is to be executed," to establish in such an instrument rules and laws of proceeding pertaining to remedial laws; and when a provision of this character is found in the constitution, unless the plain language of its terms required it, it should be construed rather as a limitation upon the power of the legislature to abridge the period of time fixed in the clause, and as the

declaration of a maxim and rule applicable to then existing and future rights and remedies, than as a mere legislative enactment for the administration of the law applicable to the defense of the statutes of limitation. Unless expressions contained in it indicated an intention to give it a retrospective effect, such intent would not be presumed, but rather the reverse. To give the clause or section referred to a retrospective operation, in accordance with the construction contended for by the appellee's counsel, would result in determining that the bare declaration, in the constitution, of an extension of the periods of time fixed previously by law in favor of a designated class of persons, is equivalent to a rule of law applicable to other persons as well, viz., adults, who previously, and before the enactment of the section, may have once answered to the description contained in the constitution. Thus, the construction insisted upon is not maintainable upon the liberal terms of the law, and it is confronted with still more grave impediments in the general rules and maxims of constitutional and statutory construction, as will be seen from the commentaries and decisions which lay down and determine the principles applicable to retrospective laws.

Chancellor Kent, in Dash v. Van Kleeck, 7 Johns., 477, remarked: "I think it can be shown that the act cannot be adjudged to operate either as a new rule for the government of a past case, or as interpreting a former statute for the direction of the courts; and I should be unwilling to consider any act so intended, unless the intention was made manifest by express words, because it would be a violation of fundamental principles, which is never presumed."

Justice Thompson, in the same case, said: "It may, in general, be truly observed of retrospective laws of every description, that they neither accord with sound legislation nor the fundamental principles of the social compact." How unjust, then, the imputation against the legislature that they intend a law to be of that description unless the most clear and unequivocal expressions are adopted.

Judge Cooley, in his treatise on Constitutional Limitations, deduces from his exploration of the subject the opinion that "a constitution should operate prospectively only unless the words employed show a clear intention that it should have a retrospective effect." It is the rule applicable to statutes, and one that is followed and approved as correct.

"Retrospective legislation, except when designed to cure formal defects, or otherwise operate remedially, is commonly objectionable in principle and apt to result in injustice; and it is a sound rule of construction which refuses lightly to imply an intent to enact it." And the learned author proceeds to add, "and we are aware of no reasons applicable to ordinary legislation which do not, upon this point, apply equally well to constitutions." Cooley on Const. Lim., p. 62, citing Allbyer v. The State, 10 Ohio, N. S., 588, and several others from other states.

It is evident, therefore, that the construction contended for by the appellee's counsel is not favored, nor will the courts incline to its adoption; and in declining to yield to its correct application here, we believe that we reach a result not only in accord with the formulated legal rules of construction applicable to the subject-matter, but that it is in consonance with the actual intention of the framers of the constitution and alike consistent with expedience and public policy. Under the view, therefore, which we entertain of the true construction of section 14 of the general provisions of the constitution of 1869, the appellee not being a minor at the date of the enactment, or of the adoption of said constitution, but was then an adult, we conclude that except for the fact that the statutes of limitation were, by the same instrument, suspended in their operation, the statute of five years would then have been running against him, and would have continued to run until the bar would have been complete; but that owing to such suspension the statute did not run against him until the 30th day of March, 1870, and at the expiration of five years from that date the bar was com-

plete against him in favor of the defendants, the appellants.

The appellants' counsel, in their brief, contend that if it should be held that section 14, general provisions of the constitution of 1869, had a retrospective effect, and that it applied to appellee, who was of age at the time the constitution went into effect, that the provision should be construed strictly, and that the limitation of seven years commenced to run from the date of his majority, which was March 29, 1869, and was completed seven years from that date, viz., March 29, 1876, which was several months before the institution of this suit.

There is much force in the proposition, and I incline to accept it as correct. Statutes of limitation are justly held "as statutes of repose, to quiet titles, to suppress frauds, and to supply the deficiencies of proof arising from the ambiguity, obscurity and antiquity of transactions." "They should be regarded with favor by courts of justice, and receive such interpretation, consistent with their terms, as will defeat the mischief intended to be suppressed, and advance the policy and remedy they were designated to promote." Gautier v. Franklin, 1 Tex., 732.

The leading object and policy of the fourteenth section of the general provisions of the constitution of 1869 was, as has been already stated, to declare at once a rule operative without the aid of further legislation to give it effect, and to limit the power of the legislature to abridge it; to establish the period of seven years instead of shorter periods of time as an indispensable requirement to bar the rights of minors and others therein designated. The general object and policy of the forty-third section of the general provisions, in the same constitution, was to suspend the operation of the statutes of limitation until the acceptance of said constitution by the United States (the 30th of March, 1870), and to expunge from their operation all the time intervening between the last-named period and the 28th day of January, 1861.

When these provisions were enacted there existed, under the authority of the constitution of 1866, a similar suspensive provision, by the terms of which the statutes of limitation again came into force and operation on the 2d of September, 1866. During the intervening period between September 2, 1866, and the adoption of the constitution of 1869, the statutes of limitation were in full force, running, and, under their operation, completing lawful and effectual bars to rights of action.

Under the construction placed by the courts upon the forty-third section, above referred to, in Bender *v.* Crawford, 33 Tex., 745, and in other succeeding cases, it has been held that the period of limitation from the 2d of September, 1866, until the adoption of the constitution of 1869, was embraced by the act of suspension and exclusion of time, under the fourteenth section, general provisions of the constitution of 1869. The question, nevertheless, is presented, if a retrospective effect is to be given to the fourteenth section of general provisions, whether it will fall within the general scope and objects of both of the provisions, when construed together, to allow to those embraced within their operations advantages beyond:

1. The exclusion of the time which had lawfully run against them between the 2d of September, 1866, and the last of November, 1869, when the constitution of 1869 was adopted by the people.

2. The exclusion of all time from the 28th of January, 1861, until the adoption of the constitution, by congress, March 30, 1870; and

3. The superadded advantage of exacting from adverse claimants a possession of seven years, instead of five years and shorter periods, before being barred of the rights to property.

The converse rule to that urged by the appellants' counsel would not only suspend the operation of the statute until March 30, 1870, and extinguish the effect of the period of adverse possession during which the defendants held the

property after the plaintiff's majority under the laws and constitution of 1866, and before the enactment of the fourteenth section, general provisions of the constitution of 1869, but would also give to the plaintiff, not merely seven years from his majority, but also seven years from the 30th day of March, 1870, when the suspension of limitations was withdrawn. In the application of the rule, as supposed, to the facts of this case, the suit being filed September 13, 1876, seven years and nearly six months had elapsed since the removal of plaintiff's disabilities.

I do not agree to a construction which would produce results which ascribe to the framers of the constitution an intent thus to defeat the beneficial objects of the statutes of limitation, especially when, from the history of the country and a knowledge of the extraordinary necessities which superinduced such abnormal legislation, we are at no loss to perceive that the general scope and purposes of the provisions which have been referred to was not so much to alter and make rules of limitation as to preserve *in statu quo* rights of citizens until the embarrassments and confusion resulting from a recent unsuccessful revolution should have been superseded by peace and good order.

It is, besides, a rule of construction that a statute, retrospective in its effects, should be construed strictly. Sedgwick on Stat. and Cons. Construction, p. 163 (note); Hedger *v.* Renwater, 3 Metc. (Ky.), 255; McCowan *v.* Davidson, 43 Ga., 480.

If the fourteenth section of the general provisions ought to have a retrospective effect, I think, under a sound construction of the entire legislation existing and bearing upon the question, the proper effect to be given to the facts of this case would be to hold that if, when the suit was instituted, seven years had elapsed since the plaintiff attained his majority, and more than five years had elapsed from the 30th of March, 1870, up. to the date of filing his petition, that he would be barred of his action.

We rest our decision of the case, however, on the ground

first discussed, and the opinion expressed on the last proposition urged by the appellants' counsel is not, in our view, essential to the disposition of the case.

This case having been tried below before the judge without a jury, and the facts being agreed upon, and thus presenting simply the questions of law arising upon them, we deem it proper to render such award upon the merits of the case as ought to have been determined below; we therefore conclude that the judgment of the district court shall be reversed, and that the plaintiff take nothing by his action; that the defendants go hence without day, and that they recover of the plaintiff all costs of this suit in both the district and supreme courts.