## KELLY v. REPUBLIC BUILDING & LOAN ASS'N.

### No. 10850.

Court of Civil Appeals of Texas. Dallas.

Oct. 25, 1930.

Ely Straus and Russell Allen, both of Dallas, for appellant.

Lee Richardson, of Dallas, for appellee.

VAUGHAN, J.

This suit was instituted by appellant on June 28, 1930, against appellee, a Texas private corporation, to recover on one of its stock certificates issued to appellant February 18, 1928, in the sum of $5,000, and to enjoin appellee, its officers, directors, agents, and employees, from prorating money on hand between all of its stockholders until the full withdrawal value of appellant's stock be paid to him. Following are appellant's material allegations:

"That on the 18th day of February, 1928, T. J. Kelly purchased of the defendant corporation 100 shares of its stock, of the value of $50 each, paying therefor the sum of $5,000; that on said date said defendant issued and caused to be issued to the plaintiff, stock certificate No. 377–B for 100 shares of such stock and on said date issued to plaintiff a pass book No. 377–B; that thereafter on the 24th day of June, 1929, T. J. Kelly, in accordance with provision of section 7 of the by-laws of the said defendant corporation, providing that any stockholder of the corporation, wishing to withdraw the value of such stock shall give the corporation 30 days written notice of such intention; that T. J. Kelly gave and caused to be given to said defendant corporation written notice of his desired intention to withdraw his stock on the 24th day of June, 1929, and 30 days thereafter and on this date the withdrawal value of the stock of this plaintiff in said defendant corporation is $5,000; upon the expiration of the 30 days aforesaid and many times thereafter this plaintiff demanded of the said defendant corporation the withdrawal value of his stock and tendered to such corporation his certificate of stock and pass book aforesaid, and it now has funds on hand sufficient to pay the amount, but the defendant corporation failed and refused to pay to the plaintiff after the expiration of the said 30 days period the withdrawal value of his stock and, although often thereunto requested, the said defendant has hitherto failed and refused and still fails and refuses to pay this plaintiff the withdrawal value of such stock held by him in said company.

"That now said defendant corporation and its officers, directors and employees threaten and are about to prorate the monies now on hand to the various persons and shareholders having filed notice of intention to withdraw; that such proration of such money as contemplated by said corporation and its said officers and directors and employees as aforesaid will not pay to this plaintiff the withdrawal value of his stock; that unless a writ of injunction issue herein restraining the said defendant corporation, its officers, directors, agents and employees from so prorating the monies now on hand as aforesaid until the full withdrawal value of this plaintiff's stock is paid to him, this plaintiff will suffer irreparable injury; that unless so restrained by this Honorable Court said defendant corporation, its officers, directors, agents and employees will so prorate such monies; that this plaintiff has no adequate remedy at law."

Appellant prayed for writ of injunction "restraining appellee, its officers, directors, agents and employees from prorating the monies now on hand to any person or persons until the full withdrawal value of appellant's stock was paid."

The temporary writ of injunction, as prayed for, was issued on June 30, 1930, under the proper fiat of the trial judge that, in addition to granting and directing the issuance of said writ, required notice to be given to appellee to appear on July 5, 1930, for the purpose of showing cause, if any, why said restraining order should not be continued in force. Appellee, by its answer, filed July 5, 1930, resisted the right of appellant to have said temporary writ of injunction continued in force, as well as his right to the equitable relief sought, solely on the ground that, in reply to a request made by appellee on June 6, 1930, to the banking commissioner of Texas for a ruling as to whether appellee had the authority to withhold payment in full of the $5,000 invested by appellant in its stock, and instead thereof make settlement with him as appellee contemplated making with all other of its stockholders, viz. by prorating money on hand and money collected in the course of liquidating its assets, appellee received from said officer on June 6, 1930, a ruling and instructions to the effect that the total amount of appellant's investment should not be paid to him, and authorized and instructed appellee to prorate all withdrawals, including that of appellant; that said banking commissioner on said June 6, 1930, exercised his discretion and on said date directed that all withdrawals of investments by stockholders of appellee thereafter be paid on a proportionate basis; that such direction of the banking commissioner of Texas was justified and authorized by section 47 of the building and loan association laws of the state of Texas; that under said ruling and direction appellee was without power or authority to pay to appellant the full amount of his investment; that, under said ruling, directions, and the law, appellant was not entitled to have appellee pay him the full amount of his investment. On July 5, 1930, the trial court dis-

solved the temporary writ of injunction, from which judgment this appeal was duly prosecuted.

The question presented by this appeal for our determination is formulated by the conflicting views of appellant and appellee in reference to whether or not the provisions of sections 7 and 47, Acts 41st Legislature (1929), Second Called Session, p. 100, c. 61 (Vernon's Ann. Civ. St. arts. 881a—7, 881a—46), regulating building and loan associations, would be retroactive if applied to the contractual rights created between appellant and appellee by the terms of the involved stock certificate, and article 7 of appellee's by-laws, in that, such application would relieve appellee, under the above state of facts, from its obligation to comply with section 7 of its by-laws.

Following are the provisions of said legislative enactment material to this appeal: "The Banking Commissioner of Texas shall have supervision over and control of all building and loan associations doing business in this State, and shall be charged with the execution of the laws of this State relating to such associations. * * *" Section 7. "No building and loan association shall permit any member to withdraw any portion of his investment in excess of $500.00 in any one month without thirty days written notice to the association, and any withdrawal must be made subject to the provisions of the by-laws with respect thereto, providing, however, that whenever the association has on hand idle funds it may pay same out to its members when and as may be determined by the Board of Directors, and provided in by-laws approved by the Banking Commissioner of Texas. * * * Except, as hereinafter provided, not more than one-half of the receipts of the association in any month shall be applied to the payment of withdrawals without the consent of the board of directors. Whenever an application for withdrawal shall have been on file and shall have remained unpaid for a period of twelve months, all of the receipts of the association in any month from dues, loans repaid, and the proceeds of all other investments shall be applied to the payment of withdrawals, and the board of directors or the Banking Commissioner of Texas, in their discretion, may direct that withdrawals thereafter be paid upon a ratable and proportionate basis." Section 47.

Following are the provisions of said by-law No. 7 material to this appeal: "Any nonborrowing shareholder wishing to withdraw his stock and receive therefor the withdrawal value of said stock, as provided in these by-laws, must give the association 30 days' notice in writing to this effect, which notice shall set forth the stock to be withdrawn by kind and class of stock, number of certificate and number of shares; provided no earnings shall be credited to such stock after 30 days from date of application for withdrawal has expired. By the term 'withdrawal value' is meant: The value of the stock at the time indicated, in the connection in which the words are used, less lawful charges against such shares in favor of the association. Such 'withdrawal value' shall be paid over only on the surrender of the pass book and certificate for such stock. The association will not be bound to pay out on the withdrawal of any stock whatever during any one month more than one-half of its net receipts for that month, and stock of all kinds filed for withdrawal shall be paid in order which it is filed and notice given, and without regard to kind or class of stock."

We find the following material facts to have been established on the hearing had July 5, 1930, viz.:

That on February 18, 1928, appellant purchased of appellee corporation 100 shares of its stock of the value of $50 each, paying therefor the sum of $5,000. That on said date appellee issued and delivered to appellant stock certificate No. 377–B for 100 shares of its capital stock, and a passbook No. 377–B. That thereafter, on June 24, 1929, appellant, in accordance with the provisions of section 7 of appellee's by-laws, supra, gave 30 days' written notice to appellee of his wish, desire, and intention to withdraw the value of his 100 shares of stock. That 30 days thereafter, and at the date of the trial of this cause, the withdrawal value of appellant stock was $5,000. That appellant was a nonborrowing stockholder. That upon the expiration of the above notice, and many times thereafter, appellant tendered to appellee his certificate of stock and passbook, and demanded of it the payment of the withdrawal value of his stock. That appellee had funds on hand at the time of the trial in court below sufficient to pay appellant the withdrawal value of his stock. That appellee failed and refused to pay appellant, after the expiration of said 30 days' written notice, the withdrawal value of his stock, and still refused so to pay. That appellee, on or about March 20, 1930, notified appellant and its other stockholders who had filed notices of withdrawal that the first pro rata distribution of its funds would be made on July 15, 1930, and that each member who had filed his withdrawal application would receive his proportionate share of the funds on hand at that time, regardless of the date of the filing of his notice of his intention to withdraw his investment. That appellee would proceed to reduce its assets to cash as quickly as possible by selling the real estate and by having its borrowing stockholders to either pay off or refinance their loans as fast as they should be able to do so. Said general notice of date March 20, 1930, contained the following statement: "Only those who

have filed their withdrawal notices will come in for their part, so if you have not filed your withdrawal application kindly sign and return promptly the application for withdrawal enclosed herewith." On June 16, 1930, appellant's application for withdrawal, under his certificate 377–B, was then, and had been for some time, next in line for payment—that is, was entitled to priority of payment of all of the requests filed for withdrawal and which had not been paid under the following provision of said section 7 of appellee's by-laws, supra, viz.: "And stock of all kinds filed for withdrawal shall be paid in order which it is filed and notice given, and without regard to kind or class of stock." That appellant's withdrawal notice had been on file for more than twelve months when this suit was instituted June 28, 1930, during which period of time appellee had continuously refused to comply with the next preceding provisions of its by-laws, although the withdrawal value of appellant's stock became payable to him 30 days from the date he gave notice in writing to appellee of his wish to withdraw his stock. That appellant did not agree to any course of procedure to be taken by appellee inconsistent with his rights to receive the withdrawal value of his stock in accordance with the terms of his certificate issued therefor, and the by-laws of appellee governing that right. That the circular letter of date March 20, 1930, sent out to all stockholders, as above stated, did not provide that appellee corporation was to close its business on July 15, 1930, but only that appellee intended to make a pro rata distribution of funds on that date. That said date was set because that was a time some of the applications for withdrawal filed by shareholders would be one year old; there being many such applications on hand. Appellant's, however, was entitled to priority over all others then on file and remaining unpaid. That on January 15, 1930, withdrawal applications on file with appellee amounted to more than $65,000. That during the year 1929 appellant paid out more than 50 per cent. of all money received by it to stockholders withdrawing their investments, and had an income at that time of about $5,000 per month. That on January 15, 1930, there were no applications ahead of appellant's. That all withdrawals previous to his had been paid. That within five months from January 15, 1930, had appellee accorded to appellant's application for withdrawal of the value of his investment the same consideration as it had to that of other stockholders, appellant's could and would have been fully paid off. That, at the date of the trial of this cause, appellee had on hand $16,000. That, as shown by the testimony of appellee's witnesses, viz. Quinton D. Corley, as president, and C. L. Frazier, its secretary, the payment to appellant of the withdrawal value of his stock was refused and withheld by appellee on account

of the provisions of sections 7 and 47, Acts 41st Legislature, supra.

When appellant acquired his stock February 18, 1928, section 7 of appellee's by-laws, supra, was in force, and while it remained so formed a part of the involved stock certificate; in other words, said certificate and by-law became a contract between the litigants as to said shares of stock so purchased, to the same extent and effect as if said by-law (section 7) had been incorporated in and as a part of said stock certificate, subject of course to any change that should be made in said by-law by the proper authority. That said by-law so remained in force until the act of the Forty-First Legislature, supra, became effective, viz. July 25, 1929, about one day after the expiration of the 30 days' notice of withdrawal given by appellant to appellee, and eleven months and three days before this suit was filed. That by the terms of said stock certificate and by-law (section 7) there was created a contract between the litigants whereby appellant was given the right, as a nonborrowing shareholder, to withdraw his stock and receive its withdrawal value by complying with the provisions of said by-law (section 7) and the right to demand of appellee the payment of such withdrawal value after the expiration of the 30 days' notice in writing given of appellant's wishes to withdraw his stock, and, in addition thereto, make it obligatory upon appellee to pay to appellant, on the expiration of said period of 30 days, said value of his stock in the order his notice of withdrawal was given. The provision of said by-law (section 7) "and stock of all kinds filed for withdrawal shall be paid in order which it is filed and notice given and without regard to kind or class of stock" clearly requires the payment for stock withdrawn to be made so as to give all withdrawals under a prior notice a preference over all similar notices subsequently thereto filed. This right remained unimpaired from the time appellant purchased his stock up to the time he filed this suit. Therefore, when said notice was given, a vested right of property was immediately created, in that appellee became obligated to pay appellant the withdrawal value of his stock on the expiration of 30 days from the date said notice was given, which right would be destroyed if said act of the Legislature should be applied as contended for by appellee.

It is the effect of the application of a statute that generally determines whether or not it is within the inhibition of article 1, § 16, Texas Constitution. We know of no rule of law in force in this state that recognizes the existence of a vested right to any particular remedy. De Cordova v. City of Galveston, 4 Tex. 470; Bender v. Crawford, 33 Tex. 745, 7 Am. Rep. 270. Therefore, if, as contended for by appellee, the Act of the

Forty-First Legislature, supra, only affected the remedy existing in favor of appellant under by-law (section 7) prior to and at the time said legislative enactment became effective, said act would not fall within the prohibition of the above constitutional provision, unless the remedy should be entirely taken away.

It is clear that to enforce said legislative enactment, as contended for by appellee, would impair the contract created and existing between the litigants in the manner and form as above stated, in that, it would annul appellant's right to demand and enforce the payment of the withdrawal value of this stock as provided for by the terms of said contract. In the case of De Cordova v. City of Galveston, supra, Chief Justice Hemphill, in delivering the opinion for the court, used the following language, which we think rules the question under discussion: "The Constitution of the Republic declares that 'no retrospective, or ex post facto law, or law impairing the obligation of contracts, shall be made,' (Sec. 16 Dec. of Rights;) and if the law, as applied to the cause of action, be within the intent of the inhibition, it is null and inoperative. * * * A distinction has always been taken between the obligation of a contract, and the remedy for its enforcement; and it has never been doubted but that the Legislature may vary 'the nature and extent of the remedy, so that some substantial remedy be in fact left.' * * * Ex post facto laws and such as impair the obligation of contracts, are retrospective; but there may be restrospective laws which are not necessarily ex post facto, or which do not impair the obligation of contracts; and by the use of the term 'retrospective' cases were, doubtless, intended to be included, not within the purview of the two former classes of laws. * * * The statute of limitations may be changed by an extension of the time, or by an entire repeal; and affect existing causes of action which, by the existing laws, would soon be barred. In such cases, the right of action is perfect, and no right of defence has accrued from the time already elapsed; but if a right has become vested and perfect, a law which afterwards annuls, or takes it away, is retrospective."

Judge Stayton, in the case of Mellinger et ux. v. City of Houston, 68 Tex. 37, 3 S. W. 249, 253, in discussing the constitutional provision under review, stated that it was intended "to protect every right, although not strictly a right to property, which may accrue under existing laws prior to the passage of any, which, if permitted a retroactive effect, would take away the right." To the same effect are the holdings in the following cases: Keith v. Guedry (Tex. Civ. App.) 114 S. W. 392; Slate et al. v. City of Fort Worth (Tex. Civ. App.) 193 S. W. 1143; Sutherland v. De Leon, 1 Tex. 250, 46 Am. Dec. 100; Sherwood v. Flemming, 25 Tex. Supp. 408; Hester & Roberts v. Donna Irrigation District, Hidalgo County, No. 1 (Tex. Civ. App.) 239 S. W. 992; Turbeville v. Gowdy (Tex. Civ. App.) 272 S. W. 559.

Appellant's right to the equitable relief sought is clearly revealed from what would result to his rights if appellee should be permitted, under the provisions of section 47, Acts 41st Legislature, supra, to prorate not only the money on hand, but all moneys that may be collected by it from time to time in liquidating its assets between all of its stockholders, viz. appellant would be denied the right to enforce the payment of the money that he is now and has been since July 24, 1929, entitled to receive out of the money now on hand and available for that purpose, under the terms of his contract with appellee, and, further, such proration would prevent the status quo from being maintained in reference to the property rights in controversy. Welsh et al. v. Carter (Tex. Civ. App.) 30 S. W.(2d) 354. We therefore hold that the trial court abused its discretion in refusing to continue in force and in dissolving the temporary writ of injunction granted to appellant on July 5, 1930; hence the judgment of the court below is reversed and this cause remanded thereto with instructions that an order be entered continuing in force said temporary writ of injunction, as prayed for by appellant, pending the disposition of this cause upon its merits.

Reversed and remanded, with instructions.