**CRUMP v. McLENNAN et ux.**

No. 28699–G.

United States District Court
N. D. California, S. D.

April 21, 1950.

William B. Wetherall, San Francisco, Cal., for plaintiff.

Joseph A. Brown, San Francisco, Cal., for defendants.

ERSKINE, District Judge.

The establishment involved in this case is a fourteen room residence known as 315 Laurel Street, San Francisco, California. Plaintiff contends that during the period of one year immediately preceding the commencement of this action on March 19, 1949 defendants charged her and collected from her for the rent of this residence the sum of $200.00 per month, which was $85.00 per month in excess of the maximum legal rent of $115.00 per month previously fixed by the Housing Authority. Plaintiff asks for $3060.00 as liquidated damages, being three times $1020.00, which is $85.00 per month for the twelve months next preceding the commencement of this action, and for attorneys' fees and costs.

Defendants make two answers to plaintiff's claim,—(1) that the extra $85.00 per month was not paid for rent, but was paid under a separate written contract between plaintiff and defendants in consideration of defendants moving their furniture from the dwelling so that plaintiff could put her furniture in said dwelling, and in consideration of defendants making certain improvements and suffering various other detriment by moving out of the dwelling, a copy of which agreement made in October, 1947 is attached to the answer; and (2) that at the time the residence was rented to plaintiff in October, 1947 it was decontrolled.

For several years prior to October, 1945 this residence had been rented by defendant to a Mrs. Ryan, who up to the time she vacated the premises in October, 1945, had conducted a rooming house on the premises. In 1942 the maximum rent of each of the living accommodations, or rooms, was registered by Mrs. Ryan, and apparently such registrations were never changed. It does not appear what, if anything, the maximum rent of the whole residence was up to 1946, but in that year it was fixed at $115.00 per month.

In October, 1945, or thereabouts, Mrs. Ryan vacated the premises and defendants took possession, and according to their testimony renovated and rehabilitated the

premises and proceeded to occupy it as a single dwelling, and as their home. At this time one or two roomers of Mrs. Ryan were still there, and according to defendants they allowed them to remain there a short time. In October, 1946 a fire occurred in the premises, damaging a portion of the dwelling and certain of the furniture, and defendants repaired this damage. In June, 1947 plaintiff was seeking a large unfurnished house, and sought to lease the dwelling from defendants, and agreed to rent from defendants for $200.00 a month. Plaintiff states that she wished a large dwelling in which to reside with her husband because she had a large amount of furniture. Plaintiff deposited a check for $100.00 deposit with defendants in June, 1947. The defendants then petitioned the Housing Authority for an increase of rent, which was denied. Defendants then returned the $100.00 to plaintiff, with a letter stating that since they had been denied the increase in rent their attorney had advised them not to rent the premises to plaintiff for $200.00 per month. Sometime later in September, or October, 1947 discussions were resumed between plaintiff and defendants resulting in a lease by defendants to plaintiff for $115.00 a month rent and the $85.00 a month agreement above referred to. These were signed in October, 1947 and the plaintiff occupied the premises in November, 1947.

The lease which was for the term of one year gave plaintiff the option to renew, which plaintiff exercised. Plaintiff is still in possession of the premises. She paid defendants $200.00 a month up to March, 1949 when she ceased paying the $85.00 and commenced this action.

■ It is clear that the $85.00 a month agreement was an effort to evade the maximum rent restrictions if such were then applicable to the dwelling. This conclusion, among other things, is supported by the fact that the $85.00 a month was to be paid not only during the original year's lease but during the renewal and extension thereof, regardless of the cost to defendants of moving out and of the alleged improvements made by them at the request of plaintiff. It is also clear that plaintiff was just

as willing as defendants to engage in this transaction. Defendants in August had returned plaintiff's deposit to her, and told her they could not rent to her for $200.00 a month because of the rent restriction to $115.00 per month, but plaintiff thereafter renewed her attempt to secure occupancy of the dwelling because she wanted to have it. Under these circumstances it is difficult to have any sympathy with plaintiff's claim to have returned to her the payments of $85.00 a month, together with treble damages. However, under the facts disclosed by the evidence I find that the $85.00 a month was intended as rent, and that the agreement for the payment thereof was merely a pretense to have it appear that it was paid for some other consideration.

The question of whether or not at the time the premises were rented by defendants to plaintiff they were decontrolled presents a greater difficulty. It must be remembered that the premises as a whole were registered and also the various housing accommodations or rooms, if rented out as Mrs. Ryan had rented them, were separately registered and that this case deals with the rental charged for the dwelling as a whole, and not the rental charged for any particular room or rooms therein.

■ In connection with their claim that the dwelling as a whole was decontrolled at the time it was leased to plaintiff defendants make two claims,—(1) that it was decontrolled under the provisions of subsection 4 of section 202(c) of the 1948 Act, 50 U.S.C.A.Appendix, § 1892(c) (4), because the period from October, 1945 to and including October, 1947 the dwelling was never occupied by more than two paying guests at any time; and (2) that during said two-year period the portion of the dwelling that was rented to roomers was less than a predominant part of the entire house, and therefore when rented to plaintiff as a whole it was decontrolled.

Answering defendants' claim that said subsection 4 applies to this case, it is my opinion that it has no such application. See interpretation issued on August 25, 1948 by the General Counsel, Office of the Housing Expediter, which appears in 13 Federal Register 5002.

Furthermore, even if said subsection 4 did apply, it is my opinion that the defendants have failed to sustain their burden of proof to show that during said period of two years they at no time had more than two paying guests. Their testimony is not very certain on this point. Moreover, the ads in the Examiner, and the testimony of the inspector from the fire department, and other circumstances, brought out by the evidence, seem to indicate that there were times during the two-year period when there were more than two paying guests occupying the premises.

On the other hand, the contention of defendants that during said two-year period the predominant part of the dwelling was occupied by them must be sustained. As I have heretofore stated, in my opinion said subsection 4 does not apply to this case. On the other hand, subsection 3 of Section 202(c) of the 1947 and 1948 Acts seems to be applicable.

Section 202(c) (3) of the 1947 Act reads as follows:—

"(c) The Term 'controlled housing accommodations' means housing accommodations in any defense-rental area, except that it does not include * * *.

"(3) any housing accommodations * * * (B) which at no time during the period February 1, 1945, to January 31, 1947, both dates inclusive, were rented (other than to members of the immediate family of the occupant) as housing accommodations." 61 Stat. 196.

Plaintiff contends that the premises in question could not have been decontrolled under the 1947 Act, since the defendants, who took possession in October 1945, did not occupy the house during the period prescribed by that Act, that is,—from February 1, 1945 to January 31, 1947. This contention appears to be correct.

The Housing and Rent Act of 1948 amended the foregoing provision so as to effect decontrol of "(3) any housing accommodations * * * (B) which for any successive twenty-four month period during the period of February 1, 1945, to the date of enactment of the Housing and Rent Act of 1948, both dates inclusive, were not rented (other than to members of the immediate family of the landlord) as housing accommodations." 62 Stat. 93.

It is the contention of the plaintiff that if decontrol were established under the 1948 Act it would not take effect until March 30, 1948, the effective date of that Act, and that the accommodations would not be decontrolled for the period from November 10, 1947, which is the date the plaintiff went into possession under her lease, until March 30, 1948. This is correct; the 1948 Act does not have the retroactive decontrol effect claimed by defendants. However, so far as the prayed for damages are concerned, any claim for this period would be barred by the statute.

In any case the issue of decontrol is dependent upon the determination of a further issue—whether the so-called "predominant use" test should be applied here, for it is admitted by both parties that there were paying tenants occupying certain portions of the premises during the two-year period from October 1945 to November 1947. This "predominant use" doctrine is found in an opinion or directive issued on August 25, 1948 by the General Counsel, Office of Housing Expediter, and is found in 13 Federal Register at page 5002 as follows:—

"VI. Housing accommodations not rented for any successive twenty-four month period between February 1, 1945 and March 30, 1948—

"3. Rental of only part of house during two-year period. Where only part of a house was rented during the two-year period *and the portion that was rented constituted less than a predominant part of the entire house (predominance being determined on a space basis), the portion that was rented is not decontrolled. However, if the entire house is subsequently rented, as one unit, it is decontrolled and likewise the rental of any portion of the house which was not rented during the two-year period is also decontrolled.*"

This interpretation by the administrative body is entitled to great weight by the courts. Being a restrictive interpretation of the statute, rather than an attempt to

expand its scope, it can be assumed that it was given serious and detailed consideration before its promulgation. Moreover, the plaintiff offered no authority negating the validity of this interpretation but questioned merely the fact of what constituted the predominant use during the relevant two-year period.

It is clear from the evidence that during said two-year period up to the rental of the dwelling from defendants by plaintiff, the predominant part thereof was occupied by defendants as their residence, particularly insofar as space was concerned. Even if it be assumed that every room claimed by plaintiff to have been occupied by paying guests were so occupied during the entire two-year period, this would not constitute a predominant part of the dwelling, particularly insofar as space was concerned. This is borne out by the testimony of guests and roomers, who testified that during their visits to the premises or their occupancy of a room therein they saw at most if at all only one or two persons who were roomers in the house.

This Court, therefore, concludes that the portion of the premises which were rented constituted less than a predominant part of the entire house, and that the entire house was decontrolled by Section 202(c) (3) of the Housing and Rent Act of 1948.

Findings of fact, conclusions of law, and judgment thereon in accordance with the foregoing to be prepared by defendants.