UNITED STATES of America
v.
Frank P. HARRIS.
Civ. A. No. 12876.

United States District Court
E. D. Pennsylvania.
Dec. 30, 1955.

W. Wilson White, Norman C. Henss, Philadelphia, Pa., for plaintiff.

Harvey N. Schmidt of Norris, Schmidt, Green, Harris & Higginbotham, Philadelphia, Pa., for defendant.

VAN DUSEN, District Judge.

This is an action for charges of rent for the period September 7, 1948, to July 6, 1951, in excess of that permitted by an order issued by the Area Rent Director on July 17, 1951, effective as of July 1, 1948, covering the second floor rear of premises 1242 North 57th Street, Philadelphia.

The defendant has lived at 1242 North 57th Street since 1925 and has owned the property since prior to January 1, 1945. From February 1, 1945, until October 1947, defendant did not rent any part of this property to any one but he did permit a member of his immediate family to occupy one room in the house rent free.[1] In October 1947, as a kindness to Matthew Robinson, defendant permitted Robinson to move his family into his house until such time as Robinson could find another place for his family. At first, Robinson was only permit-

1. Robinson's testimony indicated that the occupant of this one room was not a member of the immediate family and did pay rent.

ted to use two back rooms on the second floor and to use the kitchen in common with defendant and his family. Robinson used defendant's furniture, as the house was fully furnished. Beginning in 1948, Robinson was allowed to gradually use more of the house, but defendant continued to make his home in this house until after Robinson finally moved out in 1951.

During the period that Robinson lived in the house, there were no other tenants, but one room was occupied for a time by defendant's relations rent free. Although Robinson admitted he was looking for another place to move his family, he never found another home until 1951. Disputes developed as to how much compensation Robinson should pay for these furnished lodgings. Finally, Robinson went to the Rent Control Authorities in 1951 and secured the order (Exhibit A attached to the complaint) which is the basis of this suit.[2]

Section 202(c) (3) (B) of the Housing and Rent Control Act, as amended by the 1948 Act, 50 U.S.C.A.Appendix, § 1892(c) (3) (B), provides as follows:

"(c) The term 'controlled housing accommodations' means housing accommodations in any defense rental area, except that it does not include
* * *
"(3) any housing accommodations
* * *
"(B) which for any successive twenty-four month period during the period February 1, 1945, to the date of enactment of the Housing and Rent Act of 1948, both dates inclusive, were not rented (other than to members of the immediate family of the landlord) as housing accommodations." 62 Stat. 93.

The date of enactment of the 1948 Act is March 30, 1948. It is clear that the defendant lived in the house as his home from February 1, 1945, to February 1, 1947, and only one possible renter could have lived in one room of the house during this period.

Title 24, Chapter VIII, Part 825, of the Regulations issued by the Office of the Housing Expediter under the Housing and Rent Act, as amended, concerns the decontrol of housing under Section 202 and Part VI, paragraph 3, contains this language (13 Fed.Reg. 5002):

"Where only part of a house was rented during the two-year period and the portion that was rented constituted less than a predominant part of the entire house (predominance being determined on a space basis), the portion that was rented is not decontrolled. However, if the entire house is subsequently rented, as one unit, it is decontrolled and likewise the rental of any portion of the house which was not rented during the two-year period is also decontrolled."

This regulation should be followed in this case for the reasons stated in Crump v. McLennan, D.C.N.D.Cal.1950, 90 F. Supp. 115, 118–119.

■ Even if the one room which was occupied by a person other than defendant during this period was not a member of his immediate family and did not pay rent (see Footnote 1), it is clear that this one room was not a predominant part of the house on a space basis. It is also clear that the part of the house rented to Robinson was not rented during the two-year period from February 1, 1945, to February 1, 1947.[3]

2. First, Robinson's appeal to the Rent Control Authorities resulted in an order dated May 1951 (P2), stating that the maximum rental was $40 a month. On the back of this order of May 1951 there is a complaint signed by Robinson stating that the electricity and gas heat have been turned off in the house and that the landlord has not provided heat, light or cooking fuel since July 1948. This order

shows as the "maximum rent date" the period March 1, 1942, to July 1, 1942. Subsequently, the Acting Area Rent Director entered an order dated July 17, 1951, decreasing the maximum rent from $40 to $30 a month, effective as of July 1, 1948.

3. By the Housing and Rent Act of 1949, 63 Stat. 18, which became effective April

Defendant testified that he had never approached the Housing and Rent Authorities in connection with either Exhibit A attached to the complaint (the order of July 17, 1951, reducing the permissible rent in this case) or with P2 (an order entered in May 1951 establishing the rental as $40 a week). Defendant states that all contact with the Housing and Rent Authorities was initiated by the complaining tenant (Matthew Robinson), who secured the order of July 17, 1951 (Exhibit A attached to the complaint) and P2. Defendant's testimony indicates that he did appear before the Housing and Rent Authorities at their request, but that he was not aware of the significance of any papers he signed or of the necessity of, or right of, appeal from any orders which were entered in connection with this property. There is no evidence in the record inconsistent with this testimony of defendant.

■ For the reasons stated above, it would normally appear that the Housing and Rent Authorities had no jurisdiction to enter the order of July 17, 1951, because those authorities had no jurisdiction to take action in connection with a property such as this which did not constitute "controlled housing accommodations." It has been consistently recognized that any order entered by a tribunal which does not have jurisdiction over the subject matter may be attacked collaterally.[4]

However, counsel for plaintiff strenuously contends that the terms of 50 U.S.C.A.Appendix, § 1894(r) make certain provisions of the Defense Production Act of 1950, 64 Stat. 798, as amended on June 30, 1952, 66 Stat. 296, 50 U.S.C.A.Appendix, §§ 2107, 2108, applicable to the order of the Area Rent Director dated July 17, 1951, with the result that the Emergency Court of Appeals is the only tribunal which can invalidate that order. See Dargel v. Henderson, Em.App.1952, 200 F.2d 564.[5]

■ In view of the fact that Section 408, 50 U.S.C.A.Appendix, § 2108, of the Defense Production Act, as amended, provides that "no court * * * shall have jurisdiction or power to consider the validity of any such * * * order * * *" except the Emergency Court of Appeals, and because of the right of defendant to secure relief from the Emergency Court of Appeals under the terms of subsection (e) of the above-mentioned Section 408, judgment will be entered for the plaintiff in the sum of $1,100. ($400. to be paid to the Treasurer of the United States for the use and benefit of Matthew T. Robinson and $710. to be paid to the Treasurer of the United States for retention by the United States), with the understanding that leave will be granted to defendant to file a complaint, within five days of this date, requesting an injunction setting aside the order of July 17, 1951, since

1, 1949, it would appear that Congress may have intended to recontrol housing accommodations which had not been rented for a twenty-four month period after February 1, 1945. See Report No. 215 of House Committee on Banking and Currency accompanying H.R. 1731, 81st Congress, and Report No. 127 of Senate Committee on Banking & Currency accompanying H.R. 1731, 81st Congress U.S.Code Cong.Service 1949, p. 1140. See also United States v. Earl Holding Co., D.C.Minn.1950, 88 F.Supp. 1000; United States v. Friedman, D.C.Iowa 1950, 89 F.Supp. 957. However, in view

of the judgment in this case, no decision is required on this question.

4. See City of Gainesville v. Brown Crummer Co., 1928, 277 U.S. 54, 59, 48 S.Ct. 454, 72 L.Ed. 781; Grubb v. Public Utilities Commission, 1930, 281 U.S. 470, 475, 50 S.Ct. 374, 74 L.Ed. 972; 21 C.J. S., Courts, §§ 108 & 109.

5. Plaintiff also relies on the following authorities: Applewhite v. Jones, 7 Cir., 1953, 207 F.2d 701, and Fancher v. Clark, D.C.Col.1954, 127 F.Supp. 452, 459–460 and cases cited in those cases. Cf. Bowles v. Carothers, 5 Cir., 1946, 152 F.2d 603.

the objection to the order is made in good faith and there is a reasonable and substantial excuse for the defendant's failure to protest immediately from the entry of the order of July 17, 1951.